664 So.2d 976 (1995)
MARTIN COUNTY, Appellant,
v.
Melvyn R. YUSEM, individually and as trustee, Appellee.
No. 93-3025.
District Court of Appeal of Florida, Fourth District.
August 30, 1995.
Order on Rehearing and Certification November 22, 1995.
Noreen S. Dreyer, County Attorney, and Gary K. Oldehoff, Assistant County Attorney, Stuart, for appellant.
Thomas E. Warner and Tim B. Wright of Warner, Fox, Seeley, Dungey & Sweet, Stuart, for appellee.
Sherry A. Spiers, Tallahassee, for amicus curiae-Department of Community Affairs.
KLEIN, Judge.
This case presents the issue of whether Martin County was making a legislative or quasi-judicial decision when it denied the appellee/landowner's request to amend the county's future land use map to allow more residential units on his property. We conclude that the county action was quasi-judicial.
The landowner's property consists of 54 acres which is part of a 900 acre tract classified in Martin County's Comprehensive Land Use Plan as a Primary Urban Services District (PUSD). Although a PUSD allows up to 2 units per acre under the comprehensive plan, the future land use map permits only 1 unit per 2 acres on this 900 acres. In 1990 the landowner filed an application seeking an amendment to the future land use map so as to allow 2 units per acre on his 54 acres, the maximum allowable under the PUSD category. If the landowner had been granted that change, he would then have requested a planned unit development (PUD) with 60 units. The PUD would not have required an amendment of the comprehensive plan.
After the county denied the amendment, the landowner sought relief in the circuit court, the details of which will be discussed *977 later. Applying a strict judicial scrutiny standard of review, the circuit court concluded that the county improperly denied the landowner's requested amendment, and the county has appealed. The county argues that the trial court erred in using the strict scrutiny standard, and that we should reverse and remand so that the trial court can determine the propriety of the county's decision under the fairly debatable standard of review. The essence of the county's argument is that because a change in the density on these 54 acres could eventually affect the density of the remaining acres in the tract, the change is a legislative decision under Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla. 1993) (Snyder II). We do not agree.
In Snyder II, the Florida Supreme Court held that "Comprehensive rezonings affecting a large portion of the public are legislative in nature," but that:
[R]ezoning actions which have an impact on a limited number of persons or property owners, on identifiable parties and interests, where the decision is contingent on a fact or facts arrived at from distinct alternatives presented at a hearing, and where the decision can be functionally viewed as policy application, rather than policy setting, are in the nature of ... quasi-judicial action... .
Snyder, 627 So.2d at 474 (quoting Snyder v. Board of County Commissioners of Brevard County, 595 So.2d 65, 78 (Fla. 5th DCA 1991) (Snyder I)).
Our supreme court also stated in Snyder II that it is "the character of the hearing" which determines whether board action is legislative (policy making) or quasi-judicial (policy application). Id. at 474, citing Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648, 652-53 (Fla. 3d DCA 1982), in which the third district explained how a quasi-judicial hearing differs from one which is legislative:
[I]t is the character of the administrative hearing leading to the action of the administrative body that determines the label to be attached to the action. .. . The procedural due process which is afforded to the interested parties in a hearing on an application for rezoning ... contains the safeguards of due notice, a fair opportunity to be heard in person and through counsel, the right to present evidence, and the right to cross-examine adverse witnesses; and it is the existence of these safeguards which makes the hearing quasi-judicial in character and distinguishes it from one which is purely legislative.
Applying Snyder II to these facts, we conclude that amending the future land use map to increase the density on this 54 acres will have a limited impact on the public, and that the action taken by the county in regard to this amendment would therefore be quasi-judicial. The board hearing "essentially addressed the change in the land use designation for a particular piece of property." Florida Inst. of Technology v. Martin County, 641 So.2d 898, 900 (Fla. 4th DCA 1994).
This case is distinguishable from Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609, 612 (Fla. 4th DCA 1994), review denied, 654 So.2d 920 (Fla. 1995), in which the amendment to the comprehensive plan involved the development of 638 acres which were bordered on 2 sides by Jonathan Dickinson State Park and the Loxahatchee River Preserve Area. The decision as to how that square mile would be developed was legislative because of "the pristine nature of the land in the park and around the river, the size of the park, and the use of it by the public." and the fact that the amendment would have created a new category of property which could be developed by using facilities from an adjacent county.
Although we have relied primarily on Snyder II to arrive at our conclusion that the county action was quasi-judicial, two cases which were being litigated in the fifth district during the period of time in which Snyder was working its way through the fifth district to the supreme court are worthy of discussion.
In City of Melbourne v. Puma, 630 So.2d 1097 (Fla. 1994), the Florida Supreme Court did not write an opinion; however, the action which it took is of interest. According to Thomas G. Pelham, in Quasi-Judicial Rezonings, Journal of Land Use & Environmental *978 Law, Vol. 9, Number 2 (Spring 1994) of Florida State University, pages 282-83, the trial court in Puma, shortly after the fifth district decided Snyder I, held that a rezoning from low density residential to commercial, which required an amendment to the comprehensive plan's future land use map, was quasi-judicial. The fifth district affirmed, City of Melbourne v. Puma, 616 So.2d 190 (5th DCA 1993), merely citing Snyder I and another of its decisions. The Florida Supreme Court then accepted jurisdiction, City of Melbourne v. Puma, 624 So.2d 264 (Fla. 1994), but after rendering its opinion in Snyder II, remanded Puma, stating that the conflict which had prompted it to take jurisdiction of Puma had been resolved by Snyder II. The supreme court's resolution of Puma is consistent with our conclusion that amendments to comprehensive plans are not necessarily legislative.
In Battaglia Properties, Ltd. v. Florida Land and Water Adjudicatory Commission, 629 So.2d 161 (Fla. 5th DCA 1993), the landowner sought an amendment to the Orange County Comprehensive Plan to change 120 acres of low-density, single family residential property, to multi-family, office and commercial property. Although Judge Sharp wrote the "majority" opinion in Battaglia, she was the only member of the panel who believed that the amendment was a legislative decision. Judge Goshorn, concurring, and Judge Cowart, dissenting, both agreed that the amendment was not legislative under Snyder I. Battaglia was issued 6 days before Snyder II was issued by the Florida Supreme Court, and, although the fifth district had an opportunity on rehearing to consider Snyder II, it adhered to its original opinion.
Our conclusion that the amendment sought in the present case was quasi-judicial leaves the landowner with a jurisdictional problem. The proper method for reviewing a quasi-judicial decision by the county under these circumstances is by common law certiorari. Snyder II, 627 So.2d at 475; G.W. Dev. Corp. v. Village of North Palm Beach, 317 So.2d 828 (Fla. 4th DCA 1975). In the present case the landowner timely filed a petition for certiorari. The county, however, moved to dismiss the petition on the ground that certiorari was not the proper method to review the decision of the county and the landowner voluntarily dismissed it, only pursuing his subsequently filed complaint for declaratory and injunctive relief. Our conclusion that the county action was quasi-judicial, which is reviewable only by common law certiorari, means that the circuit court had no jurisdiction.[1]
In Snyder II our supreme court said:
[I]n the posture of this case, we are reluctant to preclude the Snyders from any avenue of relief. Because of the possibility that conditions have changed during the extended lapse of time since their original application was filed, we believe that justice would be best served by permitting them to file a new application for rezoning of the property. The application will be without prejudice of the result reached by this decision and will allow the process to begin anew according to the procedure outlined in our opinion.
Id. at 476.
In light of the manner in which this area of the law was evolving when the landowner filed and dismissed his petition for common law certiorari in early 1991, we conclude that justice would best be served in the present case if the landowner were permitted to file a new application for amendment. We reverse the judgment because the trial court had no jurisdiction, but without prejudice to the landowner's starting anew.
GLICKSTEIN, J., concurs.
PARIENTE, J., dissents with opinion.
PARIENTE, Judge, dissenting:
In my opinion, we should be extremely cautious before labeling a decision by a county not to amend its properly adopted comprehensive *979 land use plan as a quasi-judicial action subject to review by the courts under the standard of strict judicial scrutiny rather than the deferential "fairly debatable" standard applicable to legislative actions. By focusing on the fact that the amendment involved only 54 acres, the majority opinion ignores the potential implication of any amendment on the remaining 900-acre tract and on the policies already embodied in the County's comprehensive land use plan, including its future land use map which is the subject of the amendment.
The majority decision also fails to address the important distinction between the process involved in obtaining an amendment to a comprehensive land use plan and a rezoning application. It ignores the fact that the Department of Community Affairs, the agency responsible for review of all amendments to land use plans statewide, did not approve the amendment because it concluded that the amendment was not consistent with the general policies and objectives of the County's overall comprehensive plan for growth management. As Judge Stone suggests in his concurrence in Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609, 613 (Fla. 4th DCA 1994), review denied, 654 So.2d 920 (Fla. 1995), generally "there is no reason to treat a commission decision rejecting a proposed modification of a previously adopted land use plan as any less legislative in nature than the decision initially adopting the plan." But that is exactly what has occurred here. If the landowner had challenged the County's initial action in adopting the future land use map, the County's action would have been evaluated under the highly deferential standard of judicial review. Yet the rejection of the amendment to the properly adopted plan is considered by the majority as quasi-judicial and thus subject to strict judicial scrutiny.
I find it difficult not to focus on the different nature of the process involved, and hence the character of the hearings, when governmental entities render decisions on amendments to comprehensive plans as part of their overall land use planning policies. In Machado v. Musgrove, 519 So.2d 629, 631-32 (Fla. 3d DCA 1987), review denied, 529 So.2d 694 (Fla. 1988), the third district explained the essential difference between planning and zoning functions:
A local comprehensive land use plan is a statutorily mandated legislative plan to control and direct the use and development of property within a county or municipality. The plan is likened to a constitution for all future development within the governmental boundary.
Zoning, on the other hand, is the means by which the comprehensive plan is implemented and involves the exercise of discretionary powers within limits imposed by the plan. It is said that a zoning action not in accordance with a comprehensive plan is ultra vires.
(Citations omitted). See also Gardens Country Club, Inc. v. Palm Beach County, 590 So.2d 488 (Fla. 4th DCA 1991).
I am not as certain as the majority that the supreme court intended its landmark decision in Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla. 1993), to apply equally to comprehensive land use plan amendments as well as to zoning petitions.[2] The decision in Snyder came as a logical extension of statewide reforms in the area of planning and zoning. As the supreme court explained, historically, local governments exercised zoning power subject *980 only to constitutional limitations of the "highly deferential standard of judicial review." Id. at 472. The result of this judicial laissez-faire approach, according to Snyder, was that "[i]nhibited only by the loose judicial scrutiny afforded by the fairly debatable rule, local zoning systems developed in a markedly inconsistent manner." Id. The supreme court pointed to the early work of Richard Babcock which "deplored the effect of "neighborhoodism" and rank political influence on the local decision making process." Id. at 472-73. Proponents of zoning reform advocated that local land use regulation be "consistent with a legally binding comprehensive plan which would serve long range goals, counteract local pressures for preferential treatment and provide courts with a meaningful standard of review." Id. at 473.
The supreme court then noted that Florida became one of the leaders of this national reform with its adoption in 1975 of the Local Government Comprehensive Planning Act, which law was "substantially strengthened in 1985 by the Growth Management Act." As the supreme court pointed out:
Pursuant to the Growth Management Act, each county and municipality is required to prepare a comprehensive plan for approval by the Department of Community Affairs. The adopted local plan must include `principles, guidelines, and standards for the orderly and balanced future economic, social, physical, environmental and fiscal development' of the local government's jurisdictional area.
Snyder, 627 So.2d at 473.
It is in this context that the supreme court enunciated a new principle for judicial review of a government's zoning decision: a landowner seeking to rezone property would first have the burden of proving that the proposal is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance after which the burden shifts to the government to demonstrate that maintaining the existing zoning classification accomplishes a legitimate public purpose. Id. at 476. This standard makes sense when applied to zoning petitions which are consistent with the comprehensive plan and its future land use map. In zoning cases, the governmental entity is involved at the local level in the application of the policies of the comprehensive land use plan to the zoning petition before it.
In contrast, when amending a comprehensive land use plan, a governmental entity must follow procedures mandated by uniform state guidelines pursuant to the Growth Management Act which are similar to the process for adoption of the comprehensive plan. See generally § 163.3184, Fla. Stat. (1993). The Act provides that the amendment of an adopted comprehensive plan proceeds in two stages  transmittal and adoption. At the transmittal stage, the local government considers whether a proposed amendment should be submitted to the state planning agency, the Department of Community Affairs (DCA), for its review to determine whether the change is consistent with the statewide growth management plan. § 163.3184(3), Fla. Stat. (1993).
If the local government decides that a proposed amendment should be transmitted to the DCA, the process will then proceed to the adoption stage. At this second stage, following receipt of a report from the DCA, including its recommendations, objections and comments, the local county government decides whether it should adopt the amendment to its comprehensive plan. §§ 163.3184(9)-(10) and 163.3187. The failure of the governmental entity to comply with these procedures and the recommendations of the DCA may result in adverse consequences to the local government including potential loss of funding for roads, bridges, or water and sewer systems and lack of eligibility for certain grants. § 163.3184(11).
In this case, the County, in considering the amendment, was required to make a determination as to whether:
The proposed land conversion is a logical and timely extension of a more intense land use designation in a nearby area, considering existing and anticipated land use development patterns, consistency with goals and objectives of the Comprehensive Growth Management Plan, availability of supportive services, including improved roads, recreation amenities, adequate school capacity, satisfactory allocations of *981 water and wastewater facilities and other needed supportive facilities.
Martin County Comprehensive Growth Management Plan, Policy M.1.a.(2).
Thus, in contrast to the rezonings at issue in Snyder, the review of the proposed amendment here required the County to engage in policy reformulation of its comprehensive plan and to determine whether it now desired to retreat from the policies embodied in its future land use map for the orderly development of the County's future growth. The county was required to evaluate the likely impact such amendment would have on the county's provision of local services, capital expenditures, and its overall plan for the managed growth and future development of the surrounding area. The decision whether to allow the proposed amendment to the land use plan to proceed to the DCA for its review and then whether to adopt the amendment involved considerations well beyond landowner's 54 acres.
When a governmental entity is considering an amendment to its previously adopted land use plan, a process strictly regulated by the Growth Management Act, there is a strong suggestion that the governmental entity is engaged in policy formulation or reformulation. The process which is followed for amendment, consisting of transmittal and adoption similar to the process for adoption of the plan, is more akin to a legislative process. In this case, in addition to the County's extended analysis of the likely effect of proposed amendments on the existing capital facilities, infrastructure and planned growth, there is mandatory involvement of the DCA, public input and public hearings.
Commentator Thomas G. Pelham, whose law review article has been referenced by the majority in this case, as well as in Section 28, agrees that comprehensive plan amendments should be treated as legislative acts for both logical and practical reasons. Logically, he argues:
[A]mendments to a legislatively adopted statement of general policy are legislative acts because comprehensive plans are policy-setting documents of general applicability. Even if the comprehensive plan amendment consists of an amendment to the comprehensive plan's future land use map which is applicable only to a single tract of land, the amendment should be deemed legislative. The future land use map alone does not determine or control the uses which can be made of a particular piece of land. Rather, the comprehensive plan as a whole, consists of legislative policies that must be applied to determine what uses can be made of a specific tract of land.
Pelham, supra at 300.
Pelham also discusses the practical implications of applying the Snyder decision to plan amendments:
From a practical perspective, characterizing a comprehensive plan amendment as a quasi-judicial act that is subject to Snyder's procedural mandates would be duplicative of the Growth Management Act, which already provides for quasi-judicial hearings in plan amendment proceedings. In adopting comprehensive plan amendments, local government must apply the general standards established by statute and administrative rule. After the Department of Community Affairs determines whether local government has complied with these legislative requirements, the local government, an affected citizen, or the Department itself can request an administrative hearing pursuant to the Administrative Procedure Act. Requiring local governments to conduct quasi-judicial proceedings on plan amendments at the local level will not serve the interest of local government, landowners, or affected citizens. On the contrary, it will unnecessarily burden an already complicated, timeconsuming and expensive process.
Id. at 307.
In addition to the logical and practical reasons to hold that actions on plan amendments should be generally considered legislative, there may be substantial benefit to the litigants and our system of justice in adopting this general principle. As it stands now, the determination of whether a particular land use amendment is legislative or quasi-judicial requires a fact-intensive inquiry on a case by case basis. This is the third occasion *982 in which our court has grappled with this issue. See also Section 28, Florida Inst. of Technology, Inc. v. Martin County, 641 So.2d 898 (Fla. 4th DCA 1994), review denied, 651 So.2d 1195 (Fla. 1995).[3] The outcome of the determination in turn not only affects the standard of review the trial court will employ, but may also determine the trial court's jurisdiction to consider the matter. Thus, where the outcome is in doubt, a careful litigant may file both an original action and a certiorari action and do so within 30 days to provide protection if the ultimate determination is that the action is quasi-judicial. See also Grace v. Town of Palm Beach, 656 So.2d 945 (Fla. 4th DCA 1995)
As in Section 28, I would find here that the county was involved in policy formulation, a legislative function. Accordingly, the trial court was required to review the County's action in a trial de novo under the deferential fairly debatable standard.

ON MOTIONS FOR REHEARING AND CERTIFICATION
KLEIN, Judge.
The landowner's motion for rehearing calls to our attention something that we overlooked, which is that his complaint alleged that the comprehensive plan itself was unconstitutional as applied to his property, and that these claims were separate and apart from his claims directed to the denial of the change he requested. Although the county argues that these claims are no longer viable, we conclude, in light of the confusion about the nature of the proceedings leading up to this appeal, that we should remand so that the trial court can consider these claims.
We also grant the county's motion to certify a question of great public importance, although we decline to use the county's suggested wording:
CAN A REZONING DECISION WHICH HAS LIMITED IMPACT UNDER SNYDER, BUT DOES REQUIRE AN AMENDMENT OF THE COMPREHENSIVE LAND USE PLAN, STILL BE A QUASI-JUDICIAL DECISION SUBJECT TO STRICT SCRUTINY REVIEW?
GLICKSTEIN, J., concurs.
PARIENTE, J., concurs specially with opinion.
PARIENTE, Judge, concurring specially.
I adhere to my original dissent, but concur in the change in the majority opinion pursuant to the landowner's motion for rehearing. I also concur in the majority's certified question because of the confusion which exists as to whether amendments to comprehensive land use plans are subject to the same analysis as rezoning applications as set forth in Board of County Commissioners v. Snyder, 627 So.2d 469 (Fla. 1993).
NOTES
[1] There is a 30-day jurisdictional deadline for filing a petition for certiorari. Fla.R.App.P. 9.100(c). The complaint was not filed within 30 days of the county's denial of the amendment. Accordingly, the complaint could not have been treated as a petition for certiorari under the authority of Florida Rule of Appellate Procedure 9.040(c), which provides that "if a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought... ."
[2] The majority suggests that the supreme court's per curiam opinion in City of Melbourne v. Puma, 630 So.2d 1097 (Fla. 1994), is supportive of this conclusion. In Puma the supreme court simply remanded the case, which involved a plan amendment, "for further consideration consistent with our opinion in Snyder." In his law review article referenced in the majority's opinion, Thomas G. Pelham refers to the supreme court's directive in Snyder as "puzzling and confusing because Snyder dealt with rezoning actions and Puma deals with comprehensive plan amendments." See Thomas G. Pelham, Quasi-Judicial Rezonings: A Commentary on the Snyder Decision and the Consistency Requirement, 9 J. Land Use & Envtl. L. 243, 299-300 (1994). He questions whether perhaps the supreme court was suggesting that local plan amendments as modifications to policy making documents should be legislative acts or was indicating that plan amendments should be categorized as either quasi-judicial or legislative based upon the number of persons or property owners affected. Pelham argues persuasively that plan amendments should be treated as legislative actions for a number of logical and practical reasons.
[3] The landowner cites to Florida Institute of Technology, Inc. v. Martin County, 641 So.2d 898 (Fla. 4th DCA 1994), review denied, 651 So.2d 1195 (Fla. 1995), as authority for the proposition that an amendment to a land use plan is policy application subject to strict judicial scrutiny. However in Florida Institute of Technology, the board of county commissioners had previously approved an application made by a prior owner to change the land use designation on a particular property and granted the requested amendment to the county's growth plan. The landowner, however, never commenced construction. When FIT reacquired the property through foreclosure, it applied for an extension of the PUD timetable agreement to proceed with the plan as already approved by the county. Under those specific facts, we found the subsequent determination by the county to involve the application of the policy decision that had already been made in approving the original application.