BARFIELD, Chief Judge.
We have before us a petition for writ of certiorari to the circuit court sitting in its appellate capacity in review of the county’s denial of petitioner’s proposed amendment to the county’s comprehensive land use plan. We deny the petition.
The petitioner sought to operate a landfill on an 83-acre parcel of the 800 acres it owns in Holmes County. The subject property, which the petitioner acquired in 1993, includes the 25-acre site of the former county landfill, which has not operated since 1990 when it was ordered closed due to violations of environmental regulations. In May 1990, the county entered into a contract with the petitioner for the latter to assume full responsibility for the closure of the landfill, including covering the landfill and installing monitoring wells, in return for its being permitted in the future to operate a landfill at the same site if it obtained the necessary environmental permits.
The county’s comprehensive land use plan, adopted in May 1991, did not contain a specific land use category for landfills, nor policies for landfill location and operation, but it recognized the existence of the closed county landfill on the subject property, which was *1328 designated for “public/semi-public/educational” use. According to the Holmes County Unified Land Development Code and the definition of “Public Facilities and Services” in appendix A of the Code, land uses allowed under this category include “all public semi-public and educational buildings, grounds and facilities, and publie/private social club buildings, schools (public and private), campuses, and their associated recreational facilities,” as well as “roads; sanitary sewer; solid waste; drainage; potable water; parks and recreation; and mass transit.”
The petitioner’s environmental permit application was opposed by Citizens’ Voice Association through its president, Ken Allison, who later became chairman of the county planning commission. In May 1993, the petitioner was issued an environmental permit that would allow it to operate a regional landfill at the site, including disposal of asbestos. In December 1993, the county attorney advised the petitioner that it would need to apply for a county development permit before it would be able to operate the landfill, and that it might also be required to obtain a comprehensive plan amendment. In March 1994, the petitioner applied for a county development permit and was informed that it would be required to seek an amendment to the county comprehensive plan which “should specify sanitary landfill as a permitted use within the proposed development site” and that the development permit application would be placed “on hold” pending the outcome of the plan amendment request. In May 1994, the petitioner filed an administrative appeal with the county planning commission, challenging the county staff’s interpretation of the comprehensive plan as requiring amendment to permit landfills and asserting that solid waste facilities were included within the definition of “public facilities and services” permitted under its land use designation. After negotiations with the county, it voluntarily dismissed the administrative appeal and the county agreed to conduct a “pre-application conference” for the purpose of determining the type of comprehensive plan amendments which would be required for a landfill and the nature of the information required to support such plan amendments. At this conference, which was attended by representatives of the various county, regional, and state planning agencies, the petitioner was advised that it should submit proposed plan amendments creating a new land use category for “landfill” and applying this category to the property on the subject property, that the “landfill” category should contain adequate locational, performance, level of service and intensity policies and standards, and that corresponding amendments to the solid waste and capital improvements elements of the comprehensive plan should be proposed.
In August 1994, the petitioner submitted an application for proposed amendments to the comprehensive plan which did not comply with the instructions it was given at the conference. Just before the scheduled public hearing on the proposed amendments, it withdrew them and in November 1994, it submitted new proposed amendments to the comprehensive plan. These included a section entitled “Data and Analysis” to support the proposed amendments to the future land use element, but there were no corresponding proposed amendments to the solid waste or capital improvements elements of the plan. The new amendments proposed to add a new land use category (“Landfill”), which could be imposed on any specific parcel “only by using the Plan Amendment process established by statute and Rule” and which could be utilized c
... only for the location of a solid waste disposal facility. The facility must be approved for operation by the appropriate state and/or federal regulatory agency(s) having jurisdiction over landfills. Other uses allowed shall be only those uses directly related and ancillary to a landfill such as office space, roads and drives, necessary improvements to a site, signage, maintenance facilities, equipment storage, etc.
Future land use policy 3-1 would be amended to include the new land use category, and the Future Land Use Map (FLUM) would be amended “by imposing the new category of ‘Landfill’ on the site of the Holmes County Landfill and the Legend on the FLUM will be amended to include the Landfill catego *1329 ry.” A new future land use policy would be added:
POLICY 3-9 — Landfill land use will be classified as follows:
Purpose — To provide land for the establishment and/or operation of a solid waste disposal facility (landfill).
Intensity — Consistent with the permit conditions imposed by the Florida Department of Environmental Protection, but not to exceed 70% of total lot area.
Uses — Class I, Class II, Class III and/or asbestos landfills.
Restrictions — No use may be permitted in this category unless the applicant for such use has • obtained all appropriate state and/or Federal permits for such use at the specific location proposed by the applicant.
The Holmes County Unified Land Development Code provides for properly noticed public hearings before the county planning commission and the board of county commissioners. The county advised the petitioner that it considered the proposed amendments to be policy formulation and would therefore conduct the hearings as legislative proceedings. The petitioner’s attorney objected, asserting that the county’s decision would constitute “a site specific regulation of land use which applies a County land use policy decision to a specific piece of real property.” He expressed concern that the proceedings “should contain the kinds of due process protections afforded by a quasi-judicial proceeding.” The county responded: “The hearing before the Planning Commission will be conducted as a legislative-type hearing. The County’s position is that the adoption of plan amendments are legislative acts.” At the public hearing before the planning commission, its attorney explained:
This will be what is called a legislative-type proceeding as opposed to a more formal quasi-judicial court-like proceeding. This hearing involves an application to amend the Holmes County Comprehensive Plan to create a new land use classification to be called landfill, and to amend the land use map of the County’s comprehensive plan to authorize construction or operation of .a landfill on a particular site. As such, this application involves policy making. Holmes County is being asked to establish as a policy that landfills will be allowed in Holmes County and that it will be allowed in a particular location as reflected in the land use map. As such this application affects the entire county. It doesn’t just affect a particular landowner, it affects the entire county and everybody in it. Therefore this will be conducted in an informal manner. It means that witnesses will not be sworn in, they will not be subject to cross-examination, rules of evidence won’t apply, and the planning commission will be allowed to consider anything that a legislative body normally considers in making these kind (sic) of policy decisions.
The chairman of the planning commission, Ken Allison, laid out the history of the landfill property and the amendment procedure, and read from the county land development code the standards for review of proposed amendments to the comprehensive plan. The petitioner then made its presentation, including experts and informational packets. It objected to the characterization of the proposed amendments as legislative and the commission’s failure to conduct a quasi-judicial proceeding, but admitted, ‘We’re going to decide on a policy.” Allison commented on the proposed amendment and the staff report, and the commission’s attorney discussed the pre-application conference and noted that the proposed amendments did not contain adequate locational criteria and performance standards. Public comments were considered, and then the petitioner presented rebuttal, asserting that the locational controls were in the environmental permitting and that “[i]f there are additional controls, locational controls that this Board would consider, that is a matter that can be considered upon receipt of the state comments and regional agency comments before you go to adoption.” Before the planning commission began deliberations, its attorney emphasized that “the County is going to make a legislative decision on this matter,” that it could consider “all the information that it deems relevant about these issues,” and that it was not bound by any administrative rules “in deciding the fundamental land use policy decision that you have to make.” He expressed *1330 concern that the proposed amendments contained no adequate locational criteria for the new landfill use category, interpreting the amendment as saying basically that “if a federal or state agency will issue us an environmental permit of some kind for it then the County can and should allow it.” Allison read excerpts from various site reports, expressed concern about problems with environmental risks, road upkeep, and traffic, and noted that 75 percent of the waste processed at the proposed landfill “will be out-of-county and out-of-state waste.” The planning commission voted unanimously to recommend that the board of county commissioners deny the petitioner’s application for amendment of the comprehensive plan.
The planning commission’s report to the board of county commissioners contained a chronology of events, relevant provisions of the county code and comprehensive plan, comments on the staff report, the conclusions and recommendation to deny the amendment proposal, and the factual and policy considerations pertaining to the recommendation. Among the cited considerations were that the proposed landfill is in an aquifer recharge area in which landfills are not permitted by the comprehensive plan, that engineering studies show pollution from the landfill would go into the aquifer or into the Choctawhat-chee flood plain, and that there was public opposition to the landfill. The report found that
... the language of the comprehensive plan indicates that a regional landfill was not envisioned. Rather, the discussion seems to be that of opening a landfill for county use only. While some individuals may have envisioned a regional landfill in Holmes County in violation of the standing ordinances against the importation of out-of-county waste into Holmes County those intentions were not reflected in the comprehensive plan or in the land development regulations....
At the public hearing before the board of county commissioners, Allison presented the planning commission’s report and recommendation. The petitioner’s attorney objected to the legislative nature of the proceedings and commented on the planning commission’s report, which he asserted contained “either incorrect legal interpretations or, as I consider them to be, clear misstatements of the facts presented to the Commission.” The planning commission’s attorney noted petitioner’s attorney’s “unflattering characterizations of Mr. Allison’s conduct of the Planning Commission hearing,” but pointed out that “at no time during the Planning Commission hearing did Mr. Hall ever object in any way to the manner in which the Planning Commission hearing was conducted, and I find it strange that he would make that kind of an objection at this late date.” He disagreed with some of the petitioner’s factual representations and expressed his opinion that the proposed plan amendment was deficient with respect to “specific detailed criteria to guide the location and the performance of landfills.” He stated:
A decision by the Board not to transmit [the proposed amendments to the Department of Community Affairs] would not necessarily mean that you are opposed to all landfills, or any particular landfill, or that you would be opposed to any and all plan amendments to provide for landfills. It simply means that you do not find these particular amendments as drafted by the applicant acceptable enough so that you would like to go forward and consider them further and adopt them. And, of course, if you decide not to transmit them, it would be without prejudice to the applicant to submit another plan amendment application which, hopefully, would comply with the guidelines that had been established before these applications were ever filed.
I would simply emphasize, in concluding, that what you have before you is a legislative land use policy decision of the highest order. You are being asked whether you want to amend your Comprehensive Plan to provide for landfills in this county. That is a decision that affects the entire county and everybody in it ...
Allison commented on the petitioner’s presentation and stated: “[I]t is not in the Planning Commission’s judgment, as reflected in this report, appropriate to send this up to the state agency for them to make decisions for *1331 this county.” The county commissioners heard public comment, all of it opposed to the proposed amendment, then voted unanimously not to transmit the proposed amendments to the Department of Community Affairs for further evaluation.
The petitioner filed a petition for writ of certiorari in the circuit court, seeking to have the board’s decision quashed and the county ordered “to transmit the Comprehensive Plan Amendment to the Department of Community Affairs in accordance with Fla. Stat. § 163.3194.” It also filed a six-count complaint against the county seeking, inter alia, a declaration that a plan amendment should not have been required (Circuit Court Case Number 95-121 CA), and a federal suit seeking a determination that ordinances prohibiting the deposit of solid waste from outside the county were unconstitutional.
In the certiorari action, the petitioner asserted that the existing comprehensive plan designation for the subject property “includes Landfill” and that neither the statutes nor the rules pertaining to land use “require a separate FLU designation for Landfill.” It contended that it had provided site-specific and uncontroverted competent substantial evidence that the proposed landfill would have no negative impacts and that the proposed amendment was consistent with state law and with the county’s comprehensive plan. It asserted that Allison, who had acted as an advocate against the amendment, had drafted the planning commission report which contained “unsupported, rank speculation regarding traffic, geology, hydrology, environmental features, drainage and contamination (present and future),” and that the board of county commissioners had denied its amendment application “solely on the erroneous County Report and public comments in opposition to the landfill.” It argued that by allowing Allison “to act as both an advocate and a decision-maker,” the county had deprived it of procedural due process and that the application denial “constituted a substantial departure from the essential requirements of law in that it violated the County’s own contractual obligations to assist in the permitting process, and, to the extent the County Report relied on Holmes County Ordinance 89-01, violated § 403.713, Fla. Stat.”
The county responded that certiorari relief was not available for judicial review of its legislative action in this case, which is evaluated under the “fairly debatable” standard and to which the procedural due process guarantees attendant on quasi-judicial actions do not apply, citing Park of Commerce Associates v. City of Delray Beach, 636 So.2d 12 (Fla.1994); Board of County Commissioners of Brevard County v. Snyder, 627 So.2d 469 (Fla.1993); Nance v. Town of Indialantic, 419 So.2d 1041 (Fla.1982); City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982); Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609 (Fla. 4th DCA 1994), rev. den., 654 So.2d 920 (Fla.1995); and Hirt v. Polk County Board of County Commissioners, 578 So.2d 415 (Fla. 2d DCA 1991). The petitioner replied that the county’s actions were quasi-judicial and subject to certiorari review, citing Snyder and Florida Institute of Technology, Inc. v. Martin County, 641 So.2d 898 (Fla. 4th DCA 1994), rev. den., Martin County v. Florida Institute of Technology, Inc., 651 So.2d 1195 (Fla.1995), and arguing that Section 28 Partnership was distinguishable. The county filed a notice of supplemental authority, citing Martin County v. Yusem, 664 So.2d 976 (Fla. 4th DCA 1995).[1]
In November 1995, the federal district court entered summary judgment in favor of petitioner, finding that the challenged county ordinances violated the Commerce Clause and section 403.713, Florida Statutes. The petitioner filed a motion in the certiorari action seeking to have the circuit court apply the doctrine of collateral estoppel to establish that the county’s decision was predicated on unconstitutional ordinances and therefore constituted a departure from the essential requirements of law. It also filed motions to consolidate the certiorari action with 95-121 CA or to stay the certiorari action until the factual issues in 95-121CA could be re *1332 solved and to supplement the record in the certiorari proceeding with the depositions and other documents in 95-121CA. The county filed memoranda in opposition to the motions. After a telephone hearing the day before the merits hearing, the circuit court denied the motions.
After considering oral arguments, the circuit court issued an order denying the petition for writ of certiorari, rejecting the petitioner’s alternative arguments that amendment of the comprehensive plan was unnecessary and that its proposed amendments contained adequate locational criteria, noting:
.. .In the first place, City Environmental consented to County’s request to submit an amendment to the Holmes County Comprehensive Plan. In doing so, City’s argument now that a plan amendment is unnecessary seems somewhat disingenuous. Secondly, it is clear from the record that the proposed amendment to the comprehensive plan is drafted in such a way that if adopted, it is conceivable that landfills could be situated at any location permitted by state environmental agencies. This is a reasonable interpretation of the proposed amendment. Such an amendment clearly contemplates a legislative policy making function of County since, if approved, it not only would transfer much of the County’s authority to determine the location of landfill sites to state regulatory agencies, but would also impact the general population of Holmes County by potentially allowing numerous landfill sites to be placed throughout the environmental landscape of Holmes County.
(Emphasis supplied: this language omitted in the amended order.) Citing Vaillant, Snyder, Section 28 Partnership, and Yusem, the court ruled:
Since the proposed amendment would create a new classification of property, to wit: landfills which is not clearly defined in the comprehensive plan, and because the amendment, if adopted, would have a transcendent impact which would affect people and land outside the immediate property in question, this Court finds that the decision of County not to accept the proposed amendment was a legitimate policy making function of the County and therefore legislative in nature and not subject to Certio-rari review by this Court.
The parties’ motions to alter or amend the judgment to delete determinations of factual issues pending in 95-121CA were granted and an amended judgment was entered deleting, inter alia, the language italicized above.
The petitioner contends that the circuit court failed to apply the correct law in determining that the board of county commissioner’s decision was legislative rather than quasi-judicial, and that under Snyder, a functional analysis must be employed to determine whether the county has reached a “limited impact” quasijudicial rezoning decision or “comprehensive” rezoning which is legislative. It asserts that any argument that the proposed amendment in this case was the establishment of an original policy, and that the county therefore rendered a legislative decision in rejecting it, would ignore the historic use of the property, the contract between the parties, the continued presence of the landfill on the property, and the comprehensive plan. It argues that Florida Institute of Technology is factually more similar to the instant case than Section 28 Partnership, and that Yusem also supports a determination that the county’s action was quasijudicial. It also contends that the circuit court departed from the essential requirements of law in failing to apply the doctrine of collateral estoppel to nullify the county’s action, in denying its motions to consolidate and defer ruling or supplement the record, and in not considering its due process claims.
At the district court level, the inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law, and re-examination of the local government decision must be avoided to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal. See Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995); Combs v. State, 436 So.2d 93 (Fla.1983); Vaillant. The resolution of this case hinges on whether the board of county commissioners’ denial of petitioner’s proposed amendments to the comprehensive land use plan was a legislative *1333 action (reviewable in a de novo hearing in a suit for injunctive or declaratory relief under the very broad “fairly debatable” standard) or a quasi-judicial action (reviewable by cer-tiorari under the “competent substantial evidence” standard). The case law indicates that the board’s action in this ease was legislative, and that the circuit court therefore properly denied the petition for writ of cer-tiorari, having applied the correct law and having afforded the parties procedural due process.
Legislative proceedings do not require the type of procedural due process that petitioner claims was denied it at the county level. Because the county’s decision was premised on several legitimate considerations, including environmental risks, traffic, and cost of road repair, we find that the circuit court did not err in not applying the doctrine of collateral estoppel based on the federal court decision. The petitioner has not demonstrated that the circuit court abused its discretion in denying its motions to consolidate, defer ruling, or supplement the record. The question of whether an amendment to the comprehensive plan was necessary is not presently before this court.
The petition for writ of certiorari, which asks this court to quash the decision of the circuit court and remand to the circuit court with instructions to grant the petition for writ of certiorari below, is DENIED.
ERVIN and DAVIS, JJ., concur.

. Review is currently pending before the supreme court on a certified question (Case No. 87,078).