690 So.2d 1288 (1997)
MARTIN COUNTY, Petitioner,
v.
Melvyn R. YUSEM, Respondent.
No. 87078.
Supreme Court of Florida.
March 27, 1997.
*1289 Robert D. Guthrie, Martin County Attorney and Gary K. Oldehoff, Assistant County Attorney, Stuart, for Petitioner.
Thomas E. Warner and Tim B. Wright of Warner, Fox, Seeley, Dungey & Sweet, P.A., Stuart, for Respondent.
Thomas G. Pelham and Shaw P. Stiller of Apgar & Pelham, Tallahassee; and Jane Hayman, Deputy General Counsel, Florida League of Cities, Inc., Tallahassee, for Florida League of Cities, Inc., Amicus Curiae.
Sherry Spiers, Assistant General Counsel, and Terrell K. Arline, Legal Director, Tallahassee, for Department of Community Affairs and 1000 Friends of Florida, Inc., Amici Curiae.
Lonnie N. Groot and Robert A. McMillan, Sanford; and Donna L. McIntosh of Stenstrom, McIntosh, Colbert, Whigham & Simmons, P.A., Sanford, for Seminole County and Seminole County Council of Local Governments, Amici Curiae.
John J. Copelan, Jr., Broward County Attorney; and Anthony C. Musto and Tamara A. McNierney, Assistant County Attorneys, Fort Lauderdale, for Broward County, Amicus Curiae.
Robert A. Ginsburg, Dade County Attorney; and Joni Armstrong Coffey and Robert L. Krawcheck, Assistant County Attorneys, Miami, for Metropolitan Dade County, Amicus Curiae.
Michael L. Rosen, Executive Director, Florida Legal Foundation, Inc., Tallahassee, for Florida Legal Foundation, Inc., Amicus Curiae.
James S. Burling and Stephen E. Abraham, Sacramento, CA, for Pacific Legal Foundation, Amicus Curiae.
WELLS, Justice.
We have for review a decision addressing the following question certified to be of great public importance:
CAN A REZONING DECISION WHICH HAS LIMITED IMPACT UNDER SNYDER, BUT DOES REQUIRE AN AMENDMENT OF THE COMPREHENSIVE LAND USE PLAN, STILL BE A QUASI-JUDICIAL DECISION SUBJECT TO STRICT SCRUTINY REVIEW?
Martin County v. Yusem, 664 So.2d 976, 982 (Fla. 4th DCA 1995) (on motions for rehearing and certification). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and hold that amendments to a comprehensive land use plan which was adopted pursuant to chapter 163, Florida Statutes, are legislative decisions subject to the "fairly debatable" standard of review. Accordingly, we quash in part the decision of the district court to the extent that it is inconsistent with the following analysis. In reaching our conclusion, we have been greatly aided by Judge Pariente's well-reasoned dissenting opinion. We approve in part the district court's decision to the extent that it permitted Yusem to file a new application for amendment without prejudice and remand to the trial court for consideration of claims which have not been considered.
Melvyn Yusem owns fifty-four acres of land in Martin County. In 1982, Martin County (County) adopted by ordinance a comprehensive plan for land use planning in the county. Subsequently, in 1990, the County replaced its earlier plan by adopting a comprehensive land use plan (Plan) pursuant to the 1985 Local Government Comprehensive Planning Act. See generally § 163.3184, Fla. Stat. (1985). Under the Plan, Yusem's fifty-four acres are part of a *1290 900-acre tract which was included within the Plan's Primary Urban Service District (PUSD). Although up to two units per acre were allowed in the PUSD under the Plan, the future land use map, a component of the Plan, restricted this 900-acre tract to only one residential unit per two acres. See § 163.3177(6)(a), Fla. Stat. (1989).
Yusem requested an amendment to the future land use map for his property from "Rural Density," which allows development of .5 units per acre, to "Estate Density," which allows development of up to two units per acre. In conjunction with this amendment, Yusem requested a rezoning of his property from "A-1" (agricultural) to "Planned Unit Development" (residential).[1]
Yusem advocated adoption of the proposal at a hearing before the Martin County Board of County Commissioners (Board). After considering the different arguments on the proposal, a majority of the Board, by a vote of three to two, voted to begin the amendment-adoption process by transmitting a copy of the complete proposed amendment to the Department of Community Affairs (Department). See § 163.3184, Fla. Stat. (1989).[2] The Department analyzed the data and analysis received and recommended that the County either abandon the amendment or revise the data and analysis to demonstrate that the proposed amendment is a logical extension of a more intensive land use in the nearby area.
Thereafter, the Board held another hearing on the proposed amendment. Other than the Department's report, no new evidence was presented. Rather than resubmitting the proposal with data and analysis supporting it, the Board voted three to two to deny Yusem's proposal.
Yusem then sought relief in the circuit court. Yusem first filed a petition for certiorari but voluntarily dismissed it, choosing instead to file a complaint for declaratory and injunctive relief. In finding in Yusem's favor, the trial court relied upon Snyder v. Board of County Commissioners, 595 So.2d 65 (Fla. 5th DCA 1991) (Snyder I), quashed, 627 So.2d 469 (Fla.1993). The trial court noted that Snyder I involved a rezoning question; however, it found the basic rationale of that case to apply in the plan-amendment context. The trial court then found that when a planning decision has an impact on a limited number of persons or property or identifiable parties and is contingent on a fact or facts, the action is quasi-judicial. Consequently, the trial court framed the issue in the case as follows: "whether or not the requested land use amendment is consistent with the Martin County Comprehensive Plan and whether or not the requested land use amendment is a logical and consistent extension of present uses in the general area of Plaintiff's land." Since resolution of the issue was contingent upon facts, the court applied the strict-scrutiny standard of review and concluded that the County improperly denied Yusem's requested amendment.
On appeal, the Fourth District reversed the trial court's ruling based upon a determination that the court was without jurisdiction to decide the merits of the action. However, in its opinion, the panel divided, with the majority agreeing that the County's decision was subject to a strict-scrutiny standard of review. Martin County v. Yusem, 664 So.2d 976 (Fla. 4th DCA 1995). The district court relied upon our decision in Board of County Commissioners v. Snyder, 627 So.2d 469 (Fla.1993) (Snyder II), in which this Court held that rezoning actions that have a limited impact on the public and that can be seen as policy applications, rather than policy setting, are quasi-judicial decisions. The district court, similar to the trial court, concluded that the County's action was essentially a quasi-judicial rezoning decision because to increase the density on Yusem's fifty-four acres would have a limited impact on the public.
*1291 The district court distinguished this case from Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609, 612 (Fla. 4th DCA 1994), review denied, 654 So.2d 920 (Fla. 1995). In Section 28 Partnership, the district court found the denial of a comprehensive plan amendment involving the development of a 638-acre tract was legislative. In contrast to Yusem's requested amendment, the tract which was the subject of the proposed amendment in Section 28 Partnership was surrounded by pristine land (it was situated at the headwaters of the Loxahatchee River and was bordered on two sides by the Jonathan Dickinson State Park), and the amendment would have created a new category of property under the Plan. Yusem, 664 So.2d at 977.
Further, the district court found support for its decision in City of Melbourne v. Puma, 630 So.2d 1097 (Fla.1994). In Puma, we accepted jurisdiction over the Fifth District's decision involving a rezoning from a low-density residential to a commercial classification. See Yusem, 664 So.2d at 977-78. We remanded Puma for further consideration in light of our opinion in Snyder II. Puma, 630 So.2d at 1097. Neither our opinion nor the Fifth District's opinion in Puma set forth the fact that the rezoning in that case required an amendment to the comprehensive land use plan.[3] However, because the rezoning in Puma did require an amendment to the comprehensive plan, the district court in Yusem found that this Court's resolution of Puma was consistent with its conclusion that amendments to comprehensive plans are not necessarily legislative. Yusem, 664 So.2d at 978.[4] The district court's majority found support for its logic in respect to the meaning of our Puma decision in an article by Thomas G. Pelham. See Thomas G. Pelham, Quasi-Judicial Rezonings: A Commentary on the Snyder Decision and the Consistency Requirement, 9 J. Land Use & Envtl. L. 243 (1994).
Judge Pariente dissented, writing that the adoption of a comprehensive land use plan, which required the county to determine whether it should alter its overall plan for managed growth, local services, and capital expenditures as embodied in the future land use map, was a legislative act; therefore, decisions concerning the amendment of a comprehensive plan should similarly be treated as legislative acts. 664 So.2d at 979. Further, Judge Pariente distinguished this case from our decision in Snyder, in which we found the denial of a request to rezone a particular parcel of land to a designation which was consistent with the policies of the plan was a quasi-judicial decision, because the rezoning request in this case was inconsistent with the plan and required a plan amendment. Judge Pariente noted that a bright-line rule finding that all plan amendments were legislative acts would provide clarity to the procedures involved in this otherwise confusing area of the law. Id. at 982. Therefore, Judge Pariente would have found that the trial court should have reviewed the county's action in a trial de novo under the deferential "fairly debatable" standard of review. Id.
*1292 On motion for rehearing and clarification, the court certified the foregoing question, asking us to clarify whether a rezoning decision which has a limited impact under Snyder II but requires an amendment to the comprehensive plan is still a quasi-judicial decision subject to strict-scrutiny review. Yusem, 664 So.2d at 982 (on motions for rehearing and certification).
To resolve this question, the County advocates that we adopt the dissent's view and find that amendments to a comprehensive plan are legislative decisions subject to a fairly debatable standard of review. The County notes that this proceeding was clearly a legislative proceeding because Yusem's request was to change, rather than apply, the existing plan. It is on this basis that the County distinguishes the case involving a request for a plan amendment from Snyder II involving a request for rezoning.
Yusem responds by arguing that the hearing before the Board was clearly quasi-judicial because during the hearing, he presented detailed evidence in support of his request; the hearing was directed at one specific property owner and one 54-acre parcel of land; and the County reviewed the facts and applied the standards contained in the plan. Yusem argues that there is no logical or factual reason to distinguish this case from Snyder II, and the trial court should strictly scrutinize this plan-amendment proceeding, which also involved a rezoning request. Several other parties have submitted amicus briefs in support of their positions.
Chapter 163, part II, Florida Statutes (1989) (Local Government Comprehensive Planning and Land Development Regulation Act) (the Act), was intended to enhance present advantages and encourage appropriate uses of land and resources. See § 163.3161(3), Fla. Stat. (1989). In furtherance of these goals, the Act requires each local government to adopt a comprehensive plan to prescribe the "principles, guidelines, and standards for the orderly and balanced future economic, social, physical, environmental, and fiscal development of the area." § 163.3177(1), Fla. Stat. (1989); see Snyder II, at 475 (stating that a comprehensive plan is intended to provide for the future use of land, which contemplates a gradual and ordered growth). A comprehensive plan includes several elements including a future land use element. See § 163.3177, Fla. Stat. (1989). With reference to this element, we have noted:
[T]he future land use plan element of the local plan must contain both a future land use map and goals, policies, and measurable objectives to guide future land use decisions. This plan element must designate the "proposed future general distribution, location, and extent of the uses of land" for various purposes. Id., § 163.3177(6)(a). It must include standards to be utilized in the control and distribution of densities and intensities of development. In addition, the future land use plan must be based on adequate data and analysis concerning the local jurisdiction, including the projected population, the amount of land needed to accommodate the estimated population, the availability of public services and facilities, and the character of undeveloped land. Id., § 163.3177(6)(a).
Snyder II, at 473.
In Snyder II, in the rezoning context, we distinguished legislative actions which result in the formulation of a general rule of policy and quasi-judicial actions which result in the application of a general rule of policy. Id. at 474. We recognized that comprehensive rezonings which affect a large portion of the public are legislative determinations; however, we also recognized that rezonings which impact a limited number of persons and in which the decision is contingent upon evidence presented at a hearing are quasijudicial proceedings properly reviewable by petition for certiorari. Id. at 474-75. In reaching this decision, we stressed that in a quasi-judicial rezoning proceeding, the landowner has the burden of proving that the proposal is consistent with the comprehensive plan and complies with all procedural requirements of the zoning ordinance before the burden shifts to the government to demonstrate that maintaining the existing zoning classification accomplishes a legitimate *1293 public purpose. Id. at 476.[5] In Snyder II, we plainly did not deal with the issue of the appropriate standard of review for amendments to a comprehensive land use plan.
Thereafter, we issued our brief opinion in Puma. As discussed above, in Puma, we accepted jurisdiction over the Fifth District's decision concerning a rezoning from a low density residential to a commercial classification. Although the rezoning in Puma required an amendment to the comprehensive land use plan, the amendment to the plan was not the focus of our decision in Puma. We recognize that our remand in Puma for further consideration in light of our opinion in Snyder II could logically be read as did the majority in Yusem since the underlying fact that the rezoning required an amendment to the comprehensive land use plan was not discussed in the opinion.
We also recognize that subsequent to Snyder and Puma, several district courts have employed a functional analysis in determining whether a plan amendment is either quasi-judicial or legislative. In some cases, the district courts have concluded that amendments to comprehensive plans are legislative decisions subject to the fairly debatable rule. See, e.g., City Envtl. Servs. Landfill, Inc. v. Holmes County, 677 So.2d 1327 (Fla. 1st DCA 1996) (county's decision to deny amendment creating new land use classification based on environmental risks, traffic, and road repair was legislative); Martin County v. Section 28 Partnership, Ltd., 676 So.2d 532 (Fla. 4th DCA), review denied, 686 So.2d 581 (Fla.1996); Board of County Comm'rs v. Karp, 662 So.2d 718 (Fla. 2d DCA 1995) (finding amendment to comprehensive plan for 5.5-mile corridor affecting 179 acres and 48 parcels was legislative); Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609 (Fla. 4th DCA 1994) (finding plan amendment requiring creation of new classification of property allowing development of land near headwaters of Loxahatchee River and state park was legislative), review denied, 654 So.2d 920 (Fla.1995). Whereas in this case, the trial court and the district court used a functional analysis to reach the opposite conclusion: that an amendment to the comprehensive plan was a quasi-judicial decision subject to strict-scrutiny review. The district court concluded that the decision by the County should be functionally viewed as having limited impact on the public since the Board hearing addressed the change in land use designation for a particular piece of property.
While we continue to adhere to our analysis in Snyder with respect to the type of rezonings at issue in that case, we do not extend that analysis or endorse a functional, fact-intensive approach to determining whether amendments to local comprehensive land use plans are legislative decisions. Rather, we expressly conclude that amendments to comprehensive land use plans are legislative decisions. This conclusion is not affected by the fact that the amendments to comprehensive land use plans are being sought as part of a rezoning application in respect to only one piece of property.[6]
As this Court noted in Snyder II, a comprehensive land use plan must be based upon adequate data and analysis in providing for gradual and ordered growth in the future use of land. Snyder II, 627 So.2d at 475; see also Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987) (finding that a local land use plan is like a constitution for all future development within the governmental boundary). Consequently, we agree with Judge Pariente's dissent below that Snyder's functional analysis in rezoning cases is not applicable *1294 in comprehensive plan amendment cases:
[I]n contrast to the rezonings at issue in Snyder, the review of the proposed amendment here required the County to engage in policy reformulation of its comprehensive plan and to determine whether it now desired to retreat from the policies embodied in its future land use map for the orderly development of the County's future growth. The county was required to evaluate the likely impact such amendment would have on the county's provision of local services, capital expenditures, and its overall plan for growth and future development of the surrounding area. The decision whether to allow the proposed amendment to the land use plan to proceed to the DCA for its review and then whether to adopt the amendment involved considerations well beyond the landowner's 54 acres.
Yusem, at 981 (Pariente, J., dissenting). We also agree with Judge Stone's concurring opinion in Section 28 Partnership that there is no reason to treat a county's decision rejecting a proposed modification of a previously adopted land use plan as any less legislative in nature than the decision initially adopting the plan. See Section 28 Partnership, 642 So.2d at 613 (Stone, J., concurring).
Our conclusion that amendments to comprehensive plans are legislative decisions is further supported by the procedures for effecting such amendments under the Act. Amendments to comprehensive plans are evaluated on several levels of government to ensure consistency with the Act and to provide ordered development. See § 163.3184(8), Fla. Stat.
The Act provides for a two-stage process for amending a comprehensive plan: transmittal and adoption. In the first stage, the local government determines whether to transmit the proposed amendment to the Department for further review. See § 163.3184(3) Fla. Stat. If the local government transmits the proposed amendment, the process moves into the second stage. The Department, after receiving the amendment, provides the local government with its objections, recommendations for modifications, and comments of any other regional agencies. See § 163.3184(4), Fla. Stat. At this point, the local government has three options: (1) adopt the amendment; (2) adopt the amendment with changes; or (3) not adopt the amendment. See § 163.3184(7), Fla. Stat. (1989).[7]
Upon adoption of the amendment by the local government, the Department again reviews the amendment. See § 163.3184(8), Fla. Stat. (1989). After this review and an administrative hearing, if an amendment is determined not to be in compliance with the Act, the State Comprehensive Plan, and the Department's minimum criteria rule, see § 163.3184(1)(b), Fla. Stat., then the matter is referred to the Administration Commission. See § 163.3184(9)(b), (10)(b), Fla. Stat. The Administration Commission, composed of the Governor and the Cabinet, see § 163.3164(1), Fla. Stat., is then empowered to levy sanctions against a local government, including directing state agencies not to provide the local government with funding for future projects. See § 163.3184(11)(a), Fla. Stat. (1989).
This integrated review process ensures that the policies and goals of the Act are followed. The strict oversight on the several levels of government to further the goals of the Act is evidence that when a local government is amending its comprehensive plan, it is engaging in a policy decision. This is in contrast to a rezoning proceeding, which is only evaluated on the local level. See Snyder.
Moreover, our conclusion today that amendments to a comprehensive plan are legislative decisions subject to the fairly debatable rule is consistent with section 163.3184, Florida Statutes (1989). As noted *1295 above, once a local government decides to adopt an amendment, the Department issues a notice of intent to find whether an amendment is in compliance with state law, see § 163.3184(9)(a), Fla. Stat., or is not compliance with state law, see § 163.3184(10)(a), Fla. Stat. In this proceeding, the determination of compliance is made using the fairly debatable rule. Id. By our decision today, we make clear that this standard applies at any stage in such proceedings.
Additionally, our decision today will further the proper administration of justice in Florida. Currently in Florida, there is much confusion surrounding the proper procedural vehicle for challenging a local government's decision concerning an amendment to a comprehensive plan. See, e.g., Yusem; Martin County v. Section 28 Partnership, Ltd., 676 So.2d 532 (Fla. 4th DCA 1996) (original action); Section 28 Partnership, Ltd. v. Martin County, 642 So.2d 609 (Fla. 4th DCA 1994) (petition for certiorari). By our holding that all amendments to comprehensive plans are legislative activities subject to the fairly debatable standard, parties will know to file such challenges as original actions in the circuit court. See Hirt v. Polk County Board of County Comm'rs, 578 So.2d 415, 416 (Fla. 2d DCA 1991).
One of the amicus briefs suggests that the trial court did not properly have subject-matter jurisdiction in the case, arguing that section 163.3184(13), Florida Statutes (1989) ("Exclusive Proceedings"), provides that proceedings under that section are the sole method for determining whether a plan amendment is in compliance with the Act. Accordingly, it is argued that Yusem should have pursued the administrative procedures outlined in section 163.3184, Florida Statutes, prior to initiating court review. See City of Jacksonville v. Wynn, 650 So.2d 182 (Fla. 1st DCA 1995). However, we note that section 163.3184 only expressly prescribes administrative proceedings to review decisions of the Department. See § 163.3184(9)(a), (10)(a), Fla. Stat. (1989). The Department is an agency as defined in section 120.52, Florida Statutes (1995), and its actions as an agency are subject to the Administrative Procedure Act. However, a county's actions are only subject to the Administrative Procedure Act to the extent the county is expressly made subject to the Act. See § 120.52(1)(c), Fla. Stat. Since section 163.3184 does not expressly subject a county's decision to deny a requested amendment to the comprehensive plan as "agency action," Yusem was not required to exhaust any additional administrative remedies prior to the filing of an action in the circuit court. It is on this basis that we distinguish Wynn, because in that case the parties were seeking review of the decision of the Department to find Jacksonville's comprehensive plan in compliance with the Growth Management Act.
Last, we note the following. The fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety. See B & H Travel Corp. v. State Dep't of Community Affairs, 602 So.2d 1362 (Fla. 1st DCA 1992). In other words, "[a]n ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity." City of Miami Beach v. Lachman, 71 So.2d 148, 152 (Fla.1953). The procedural requirements inuring to a quasi-judicial proceeding are distinct from those inuring to a legislative proceeding. See generally City Envtl. Servs. Landfill, Inc. v. Holmes County, 677 So.2d 1327 (Fla. 1st DCA 1996). However, we do point out that even with the deferential review of legislative action afforded by the fairly debatable rule, local government action still must be in accord with the procedures required by chapter 163, part II, Florida Statutes, and local ordinances. Cf. David v. City of Dunedin, 473 So.2d 304 (Fla. 2d DCA 1985) (finding null and void an ordinance enacted in violation of the notice provisions of the relevant statutes).
Accordingly, we hold that all comprehensive plan amendments are legislative decisions subject to the fairly debatable standard of review. We find that amendments to a comprehensive plan, like the adoption of the plan itself, result in the formulation of policy. We approve in part the district court's decision *1296 to the extent that it permitted Yusem to file a new application for amendment without prejudice, and we remand to the trial court for consideration of claims which have not been considered. We agree with the district court that in light of the manner in which this area of law was evolving at the time of his filing the action, justice would best be served by allowing the landowner to start anew. Yusem, 664 So.2d at 978.
It is so ordered.[8]
KOGAN, C.J., and OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
ANSTEAD, J., recused.
NOTES
[1] Neither party argues that this requested zoning change did not require an amendment to the Plan.
[2] Chapter 163, part II, Florida Statutes (Local Government Comprehensive Planning and Land Development Regulation Act), provides for a two-stage amendment-adoption process: transmittal and adoption. § 163.3184(3),(7), Fla. Stat. (1989).
[3] The district court noted that the rezoning request required an amendment to the comprehensive plan in its opinion following remand from this Court. See City of Melbourne v. Puma, 635 So.2d 159 (Fla. 5th DCA 1994).
[4] Additionally, the district court relied upon Battaglia Properties, Ltd. v. Florida Land & Water Adjudicatory Commission, 629 So.2d 161 (Fla. 5th DCA 1993). The majority in Yusem found that two members of the three-judge panel in Battaglia concluded that an amendment to a comprehensive plan was not a legislative decision under Snyder I. Yusem, 664 So.2d at 978. However, Battaglia is distinguishable from the case at bar. In Battaglia, the developer sought and received an amendment to the comprehensive plan necessary for the development of the property, but the amendment contained new zoning conditions on the property. The issue in that case was the propriety of new zoning conditions in conjunction with an amendment to the comprehensive plan. Battaglia, 629 So.2d at 165. Judge Sharp found that the zoning changes at issue in Battaglia were legislative decisions. Id. Judge Goshorn would have found that the conditional rezoning changes were quasi-judicial decisions but agreed with the result reached by Judge Sharp. See id. at 169 (Goshorn, J., concurring specially). Judge Cowart concluded that the rezoning decisions were quasi-judicial and dissented from the majority's conclusion. Id. (Cowart, Senior Judge, dissenting). Battaglia is thus distinguishable from the case at bar, which confronts purely the question of the proper standard of review of amendments to a comprehensive plan.
[5] We additionally noted that even in a situation in which the denial of a zoning application would be inconsistent with the plan, the local government should have the discretion to decide that the maximum development density should not be allowed provided the government approves some development that is consistent with the plan and the decision is supported by competent, substantial evidence. Snyder II, 627 So.2d at 475.
[6] We do note that in 1995, the legislature amended section 163.3187(1)(c), Florida Statutes, which provides special treatment for comprehensive plan amendments directly related to proposed small-scale development activities. Ch. 95-396, § 5, Laws of Fla. We do not make any findings concerning the appropriate standard of review for these small-scale development activities.
[7] In 1993, the legislature amended section 163.3184, Florida Statutes, to require the Department to review a plan amendment if it determines that this review is necessary or if it is requested to do so by a regional planning council, affected person, or local government transmitting the plan. See ch. 93-206, § 10, Laws of Fla. For a discussion of the changes made by the legislature in 1993, see David L. Powell, Managing Florida's Growth: The Next Generation, 21 Fla. St. L.Rev. 223 (1993).
[8] We do not address any of the other issues raised by the parties.