787 So.2d 838 (2001)
BROWARD COUNTY, Petitioner,
v.
G.B.V. INTERNATIONAL, LTD., etc., et al., Respondents.
No. SC93115.
Supreme Court of Florida.
June 7, 2001.
*840 Edward A. Dion, County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and Tamara M. Scrudders, Assistant County Attorney, Fort Lauderdale, FL, and Anthony C. Musto, former Chief Appellate Counsel, as to the briefs filed, Hallandale, FL, for Petitioner.
James C. Brady of Brady & Coker, Fort Lauderdale, FL, for Respondent.
SHAW, J.
We have for review G.B.V. International, Ltd. v. Broward County, 709 So.2d 155 (Fla. 4th DCA 1998), based on conflict with City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982), and numerous other decisions of this Court. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve in part and quash in part G.B.V. as explained below.

I. FACTS
G.B.V. International ("G.B.V.") owns thirty acres of undeveloped land in the City of Coconut Creek ("City") within Broward County ("County") on which it seeks to build 300 garden-style apartments in an area termed Sawgrass Exchange. G.B.V. sought to amend the Broward County Land Use Plan ("BCLUP") to change the designation of this parcel from "Industrial" to "Residential," and to allow a density of ten dwelling units per acre. The Broward County Planning Council ("Planning Council") reviewed the proposed amendment and recommended approval of the change in designation but at a density of only five units per acre. The Broward County Commission ("Commission") at a meeting on December 12, 1995, voted to tentatively transmit the amendment as proposed, i.e., at ten units per acre, to the Florida Department of Community Affairs ("Department") to see if the amendment would pass state muster. After the Department indicated that the amendment would pass, the Planning Council reviewed the amendment anew and again recommended adoption at a density of five units per acre. The Commission at a meeting on May 1, 1996, discussed the matter at length with G.B.V. and ultimately adopted the amendment at a compromise density of six units per acre.
G.B.V. several months later sought approval of a perimeter plat for the Sawgrass Exchange development at a density *841 of ten units per acre. At the Commission meeting on November 12, 1996, G.B.V. explained that it recently had obtained approval from the City to use "flex" units to make up the additional four units per acre that it had been denied earlier.[1] G.B.V. pointed out that due to its use of City flex units the following now obtained: (1) Its plat comported with the BCLUP; (2) no further amendment to the BCLUP was required; (3) the plat met all the objective requirements for approval; and (4) the County staff had recommended approval. The Commission by oral vote following general discussion approved the plat application but at a density of six units per acre rather than the requested ten.
G.B.V. sought certiorari in the circuit court, arguing that the Commission should have approved the plat at ten units per acre. The court denied the petition, ruling inter alia that G.B.V. was estopped from bringing its claim because G.B.V. had misrepresented its position on flex in the proceedings before the Commission.[2] G.B.V. then sought certiorari in the district court. The court granted certiorari, quashed the circuit court order, addressed the underlying plat controversy, and remanded for entry of an order approving the plat at ten units per acre.[3]
We granted review based on conflict with numerous decisions of this Court holding that a district court's role on "second-tier" certiorari review is limited to the two-step assessment set forth in City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982). Broward County contends that *842 the district court exceeded the scope of its authority on certiorari review. G.B.V. concedes that conflict exists but contends that the district court ruled properly.

II. THE APPLICABLE LAW
A decision granting or denying a site plan or plat application is governed by local regulations, which must be uniformly administered. The allocation of burdens expressed in Irvine v. Duval County Planning Commission, 495 So.2d 167 (Fla. 1986), is applicable to such proceedings:
[O]nce the petitioner met the initial burden of showing that his application met the statutory criteria for granting such [applications], "the burden was upon the Planning Commission to demonstrate, by competent substantial evidence presented at the hearing and made a part of the record, that the [application] requested by petitioner did not meet such standards and was, in fact, adverse to the public interest."
Irvine, 495 So.2d at 167. To deny a plat application, a local government agency must show by competent substantial evidence that the application does not meet the published criteria. Once the agency has denied the application, the developer may seek judicial review via the writ of certiorari, as explained below.[4]
The common law writ of certiorari is a special mechanism whereby an upper court can direct a lower tribunal to send up the record of a pending case so that the upper court can "be informed of" events below and evaluate the proceedings for regularity.[5] The writ functions as a safety net and gives the upper court the prerogative to reach down and halt a miscarriage of justice where no other remedy exists.[6] The writ is discretionary[7] and was intended to fill the interstices between direct appeal and the other prerogative writs.[8] The writ never was intended to redress mere legal error, for common law certiorariabove allis an extraordinary remedy, not a second appeal.[9]
*843 Florida courts have adapted the common law writ of certiorari for use in various scenarios, including the following: (1) to review actions of local government agencies; (2) to review decisions of circuit courts acting in their appellate capacity; and (3) to review nonfinal, nonappealable orders of lower tribunals, e.g., discovery orders.[10] The first category of adjudicatory action, i.e., actions of local government agencies, is in issue in the present case. This category comprises local agency action that is not otherwise subject to review under the Administrative Procedure Act[11] and is further divided into two subgroups: quasi-judicial actions and legislative actions.[12] As a rule, only quasi-judicial actions are reviewable via certiorari.[13]
The Court in City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982), delineated the standards of review for local agency action at both the circuit and district court levels. The inquiry at both levels is deliberately circumscribed out of deference to the agency's technical mastery of its field of expertise,[14] and the inquiry narrows as a case proceeds up the judicial ladder.[15] "First-tier" certiorari review is three-pronged, and "second-tier" certiorari review is two-pronged:
Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine [1] whether procedural due process is accorded, [2] whether the essential requirements of the law have been observed, and [3] whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines [1] whether the circuit court afforded procedural due process and [2] applied the correct law.
Vaillant, 419 So.2d at 626.[16] In brief, first-tier certiorari review is not discretionary but rather is a matter of right and is akin in many respects to a plenary appeal, whereas second-tier certiorari review is more restricted and is similar in scope to true common law certiorari.[17]
Consistent with the limited purpose of this writ, the Court long ago delineated the narrow range of options *844 that are available to a reviewing court on certiorari review. The role of the reviewing court in such a proceeding is to halt the miscarriage of justice, nothing more:
On certiorari the appellate court only determines whether or not the tribunal or administrative authority whose order or judgment is to be reviewed has in the rendition of such order or judgment departed from the essential requirements of the law and upon that determination either to quash the writ of certiorari or to quash the order reviewed.
When the order is quashed, as it was in this case, it leaves the subject matter, that is, the controversy pending before the tribunal, commission, or administrative authority, as if no order or judgment had been entered and the parties stand upon the pleadings and proof as it existed when the order was made with the rights of all parties to proceed further as they may be advised to protect or obtain the enjoyment of their rights under the law in the same manner and to the same extent which they might have proceeded had the order reviewed not been entered.
The appellate court has no power in exercising its jurisdiction in certiorari to enter a judgment on the merits of the controversy under consideration nor to direct the respondent to enter any particular order or judgment.
Tamiami Trail Tours v. Railroad Commission, 128 Fla. 25, 174 So. 451, 454 (1937) (on rehearing). This limited range has been addressed by the district courts,[18] and the modern trend in this Court's decisions has been to further restrictnot expand the scope of this writ.[19]

III. THE PRESENT CASE
As noted above, although the County staff recommended approval of G.B.V.'s plat application at ten units per acre, the Commission approved the application at only six units per acre. The circuit court denied G.B.V.'s petition for certiorari, ruling that the Commission's decision was legislative in nature and that G.B.V. was estopped from raising its claim because G.B.V. had misrepresented its position on flex in its application before the Commission.[20] This ruling was improper. *845 First, the Commission decision was a quasi-judicial, not legislative, function and was reviewable via certiorari.[21] Second, rather than limiting its review of the Commission decision to the three "first-tier" factors set forth in Vaillant, the court embarked on an independent review of the plat application and made its own factual finding based on the cold record (i.e., the court determined that G.B.V. had misrepresented its position on flex). In other words, instead of simply reviewing the record to determine inter alia whether the Commission's decision was supported by competent substantial evidence, the court combed the record and extracted its own factual finding. The court thus exceeded the scope of its authority under Vaillant.
At the district court level, the court granted certiorari and quashed the circuit court decision, concluding that the decision "was a departure from the essential requirements of law." This ruling was proper.[22] As explained above, according to the plain language of its order, the circuit court made its own factual finding based on the cold record. The circuit court thus applied the wrong law (i.e., instead of applying the Vaillant standard of review, the court applied an independent standard of review), and this is tantamount to departing from the essential requirements of law (as the district court ruled).[23]
The district court proceeded to evaluate the merits of the Commission's decision and remanded for entry of an order directing the Commission to approve the plat at ten units per acre. This was improper. Pursuant to Vaillant, the district court's role on second-tier certiorari review was limited to a two-pronged review of the circuit court decision, not a de novo review of the agency decision. Once the district court granted certiorari and quashed the circuit court orderi.e., once the court halted the miscarriage of justicethe district court's job was ended. By conducting its own de novo assessment of the plat application, the district court arrogated to itself the authority of the Commission and functioned as a kind of roving "super agency."[24]

*846 IV. CONCLUSION
As in Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla.2000), we decline to conduct our own review of the present record to determine whether the Commission's decision is supported by competent substantial evidence, for to do so would usurp the first-tier certiorari jurisdiction of the circuit court. Instead, we return this case to the circuit court and direct that court to apply the three-pronged standard of review set forth in Vaillant. Notably, when applying the third prong, the court should review the record to determine simply whether the Commission's decision is supported by competent substantial evidence.
As explained above, a local government agency may deny a plat application only if the agency demonstrates that the applicant failed to meet the objective legal requirements for approval. Thus, for the County to prevail on remand, the record must contain competent substantial evidence to support the conclusion that G.B.V. failed to meet the County's published criteria for plat approval.[25] Otherwise, the Commission's decision must be quashed.
We note that the Commission did little to facilitate judicial review or to bolster its own decision; it made no findings, stated no formal reason for its decision, and issued no written order. Although the Court in Board of County Commissioners v. Snyder, 627 So.2d 469, 476 (Fla.1993), recommended but did not require written findings of fact in a quasi-judicial proceeding, our ruling in that case has been called into question in subsequent years.[26] Accordingly, we refer the following matter to the Rules of Judicial Administration Committee of The Florida Bar for study: Whether the Court should implement a rule requiring written final decisions with detailed findings of fact in local land use actions that are subject to review in the courts.
Based on the foregoing, we approve in part and quash in part the district court decision in G.B.V. as explained herein.
It is so ordered.
HARDING, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion.
PARIENTE, J., dissents with an opinion, in which ANSTEAD, J., concurs.
WELLS, C.J., concurring.
I write separately to explain why this Court's opinions in Martin County v. Yusem, 690 So.2d 1288 (Fla.1997), and Coastal Development of North Florida, Inc. v. City of Jacksonville Beach, 788 So.2d 204 (Fla.2001), do not apply to this case. I also write to explain why I disagree with Justice Pariente's belief that a written findings requirement should be imposed in *847 this opinion upon local governments in land use proceedings.
A review of respondent G.B.V.'s actions before the various local governments is helpful. G.B.V. originally sought, at the December 12, 1995, Broward County Commission (County Commission) meeting, an amendment to the Broward County Land Use Plan (BCLUP), seeking to amend the land use designations of approximately fifty-five acres of land in the City of Coconut Creek (City). At that time, the BCLUP classified approximately fifty and seven-tenths acres of that land as "Industrial" and four and three-tenths acres as "Office Park." G.B.V. desired that the BCLUP be amended to reflect classifications of approximately thirty acres as "Low Medium Residential" (ten dwelling units per acre maximum), twenty and four-tenths acres as "Low Residential" (five dwelling units per acre maximum), and four and six-tenths acres as "Commercial."
At the December 12, 1995, meeting, staff recommended that all of the approximate fifty acres G.B.V. wanted designated residential be classified as Low Residential, with a maximum density permitted of five units per acre. Despite opposition to the Low Medium Residential classification on the thirty acres, the County Commission voted to transmit the proposal as requested by G.B.V. to the Florida Department of Community Affairs for its review and approval. After the Department's approval, G.B.V., on May 1, 1996, returned before the County Commission to pursue its request for an amendment to the BCLUP. Again, staff recommended that all fifty acres be classified as Low Residential, including the thirty-acre parcel G.B.V. sought to be classified as Low Medium Residential. The County Commission ultimately approved the land use amendment as requested but only allowed a maximum of six dwelling units per acre on the thirty-acre portion of the tract of land. G.B.V. did not challenge this decision.[27]
Thereafter, G.B.V. pursued with the City a request to flex 120 units.[28] Apparently, under the provisions of the BCLUP, a city without the consent of the County Commission may flex dwelling units above authorized densities within certain zones so long as the total number of units authorized in any particular zone are not exceeded. The City granted the request, and the Broward County Planning Council recertified the Coconut Creek Land Use Element on September 26, 1996. Returning to the County Commission on November 12, 1996, G.B.V. requested approval of its perimeter plat, which included a density of ten units per acre on the thirty acre parcel to reflect the flex. With the flex, G.B.V.'s perimeter plat conformed to the BCLUP.[29] The County Commission rejected the perimeter plat with ten-unit density and only authorized a maximum of six units per acre density on the thirty-acre parcel. This is the decision from which G.B.V. petitioned for certiorari review *848 and which is ultimately before this Court.
In Yusem, we held that amendments to comprehensive land use plans are legislative decisions subject to strict scrutiny review in an original action and not by certiorari. See Yusem, 690 So.2d at 1295. We extended the holding in Yusem to apply to small-scale development amendments as well. See Coastal Development, 788 So.2d at 209-10. In the instant case, the circuit court in its order denying certiorari relief relied extensively upon Yusem to deny the certiorari petition on its merits.[30] This was error.
The record reveals that the G.B.V. petitioned the circuit court for a writ of certiorari seeking to review the County Commission's November 12, 1996, denial of a perimeter plat that would have allowed a density of ten units per acre on approximately thirty acres out of approximately fifty-five acres owned by G.B.V. within the City. In granting certiorari, the circuit court construed Yusem as applicable to the instant case because the circuit court stated that G.B.V. needed an amendment to the comprehensive plan as a predicate to the perimeter plat request. The circuit court reasoned: "Under the bright line test of Yusem which states that all rezoning decisions that require land use plan amendments are legislative, the decision here must be deemed to be legislative." G.B.V. Int'l, Ltd. v. County of Broward, No. 96-17083 CACE(21), at 10 (Fla. 17th Cir. Ct., order dated July 1, 1997). This construction of Yusem was error.
The applicant in Yusem requested a rezoning in conjunction with the comprehensive land use change. See Yusem, 690 So.2d at 1290. In holding that the comprehensive amendment was legislative in nature, we made clear that our "conclusion is not affected by the fact that the amendments to comprehensive land use plans are being sought as part of a rezoning application." Id. at 1293. The distinction in the instant case is that, while G.B.V. had previously successfully obtained a land use change to the City's comprehensive plan and the BCLUP (albeit at a lower density than it had requested), the circuit court was not reviewing the County Commission's previous decision to amend the BCLUP. In fact, G.B.V. did not challenge the County Commission's amendment to the BCLUP. Rather, the issue before the circuit court was whether the County Commission erroneously denied G.B.V.'s requested perimeter plat which conformed to the BCLUP. The burdens associated with upholding local government action in a denial of a perimeter plat and a denial of a comprehensive land use plan amendment are significantly different. Thus, Yusem and Coastal Development do not apply here.
I also write separately to express my disagreement with Justice Pariente's view that written statements must be required in all cases where a local government is *849 acting in a quasi-judicial capacity in a zoning hearing and decision. I believe this requirement is too cumbersome and could lead to delay, boilerplate writings, and, likely, to litigation over whether the local government's written statements are sufficient. Not every zoning decision needs written findings.
I also disagree with the view that this Court should recede in this case from the holding in Snyder with regard to the writing requirement. I do approve the majority opinion's referral of this to the Rules of Judicial Administration Committee for study.[31] Before this Court imposes such a requirement on local governments in an opinion, especially when the requirement was not before this Court during its review, I believe we should have a recommendation by the committee after hearing input from local governments and others who have a stake in land use decisions.
PARIENTE, J. dissenting.
I dissent. I would approve the reasoning and the result reached by the Fourth District. In addition, rather than refer the issue of written findings to the Rules of Judicial Administration Committee for study, I would recede from that portion of Board of County Commissioners v. Snyder, 627 So.2d 469, 476 (Fla.1993), in which this Court declined to require findings of fact, while acknowledging that such findings would be "useful." I would require written findings, as would be required of any other administrative agency sitting as a fact-finder. This is especially the case if the inquiry at both the trial and appellate levels is, as asserted by the majority, "deliberately circumscribed out of deference to the agency's technical mastery of its field of expertise." Majority op. at 843. In this case, the majority observes that "the Commission did little to facilitate judicial review or to bolster its own decision; it made no findings, stated no formal reason for its decision and issued no written order." Id. at 846.
Ironically, our clear intent in Snyder was to enhance the quality of judicial review of zoning decisions by enunciating a "strict scrutiny" standard of review rather than the traditionally deferential review accorded legislative decisions. Our goal was to hold local governmental entities more accountable for their zoning decisions, improve the manner in which zoning decisions are made, institute a meaningful standard of review of zoning decisions, and minimize the chance of arbitrary and inconsistent land use decisions.
The question is whether, in the aftermath of Snyder, the decision-making process is subject to any "stricter scrutiny" than before Snyder; whether review of the local decision-making process has improved or, of even greater concern, whether the opportunity for arbitrariness and inconsistency has increased. Because of this Court's failure to require the local governmental entity to enter written findings of fact in support of its zoning decision and because certiorari is utilized as the vehicle for review to the circuit court, I am concerned that we have improved neither the quality of the decision-making process in zoning matters nor the appellate review of that process.
In fact, contrary to our intent in Snyder, we may have unintentionally lessened *850 rather than heightened the review of the zoning decision. For example, a single circuit court judge is able to review the actions of the local governmental entity, and review of that judge's decision by an appellate court is extremely limited. If the local governmental entity fails to enter written findings, then this circuit court review is rendered virtually unreviewable. Therefore, in the absence of requiring written findings, with all due respect for individual trial courts, we may have unintentionally vested too much discretion in a single circuit court judge whose decision is virtually shielded from appellate review subject to reversal only if it has resulted in a denial of procedural due process or an application of the wrong law.[32]See Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). We recently reacknowledged the narrowness of appellate review by the district courts of appeal in zoning cases in Florida Power & Light v. City of Dania, 761 So.2d 1089, 1092 (Fla. 2000) ("As a practical matter, the circuit court's final ruling in most first-tier cases is conclusive, for second-tier review is extraordinarily limited."). Thus, because the local governmental entity is not required to make written findings, the circuit court's statement that the decision of the local government was not supported by competent substantial evidence becomes essentially unreviewable.
In a recent amicus brief filed in this Court by 1000 Friends of Florida, Inc., and the Florida Chapter of the American Planning Association, in Minnaugh v. County Commission, 783 So.2d 1054 (Fla.2001), the amici argued that small plan amendments should be considered legislative and not quasi-judicial acts. Among their several reasons for advancing this view, they asserted that:
Legislative matters are reviewed de novo in the circuit court and the losing party may take a direct appeal to the applicable district court of appeal. Pure appellate review is much broader than certiorari review, and the district courts often publish a written opinion, which assists in the development of land use law in Florida. However, to conclude a local land use decision is quasi-judicial in nature, seriously limits the involvement of the district courts of appeal. Review of quasi-judicial decisions is appellate in nature to the circuit court and is based on the record prepared at the local level, the local government in effect playing the role of the finder of fact.
Review by the district court of decisions on a writ of certiorari is narrower still and there is no longer an appeal of right to the districts courts. Circuit court rulings are seldom published, and they are binding only in that circuit.
Amicus Curiae Brief at 23.
I also share the concerns expressed in a recent article:
The past seven years have demonstrated that the Snyder decision has been difficult for courts to apply. Circuit courts must determine whether zoning decisions are supported by competent and substantial evidence but must avoid, on certiorari review, substituting their judgment for local zoning boards *851 and "re-weighing" the evidence. District courts must determine whether circuit court decisions meet the "essential requirements of law" but also must avoid, in a "second" certiorari review, undertaking any review of the evidence in the record.
T.R. Hainline, Jr. & Steven Diebenow, Snyder House Rules? The New Deference in the Review of Quasi-Judicial Decisions, Fla. B.J., Nov. 2000, at 53, 53 (footnote omitted). The authors posit that the difficulty in reviewing zoning board decisions can be traced to the Snyder decision and our rejection of a requirement that would have mandated written findings. As they observe:
Written findings, however, are a critical ingredient in the review of quasi-judicial decisions. They are necessary guide-posts without which a circuit court is left to review the outcome of the local zoning board's vote on the rezoning without the benefit of the board's reasoning.
In its required review of the evidence below, a circuit court applying Snyder faces a "Catch-22": the court cannot "re-weigh" the evidence or substitute its judgment for that of the zoning board, and yet, in the absence of written findings, any evidence which is relied upon by the circuit court in its review may or may not have been relied upon by the zoning board. Thus, in examining the record without the guidance afforded by written findings, the circuit court necessarily is "re-weighing" the evidence and substituting its judgment for that of the zoning board. District courts, quick to find error in the "re-weighing" of evidence, urge circuit courts to search the record for any evidence in the record supporting the outcome of the zoning board's vote. Exit nondeferential review of decisions which are quasi-judicial; enter deferential review of decisions which are, in effect, viewed as legislative.
Id. (footnotes omitted). Indeed, the Fifth District in Snyder observed that written findings of fact were essential to effective strict scrutiny of quasi-judicial proceedings:
Landowners adversely affected by the action of a governmental zoning authority are entitled to access to the trial and appellate courts of this state for full judicial review of such governmental action.
... Since a property owner's right to own and use his property is constitutionally protected, review of any governmental action denying or abridging that right is subject to close judicial scrutiny. Effective judicial review, constitutional due process and other essential requirements of law, all necessitate that the governmental agency (by whatever name it may be characterized) applying legislated land use restrictions to particular parcels of privately owned lands, must state reasons for action that denies the owner the use of his land and must make findings of fact and a record of its proceedings, sufficient for judicial review of: the legal sufficiency of the evidence to support the findings of fact made, the legal sufficiency of the findings of fact supporting the reasons given and the legal adequacy, under applicable law (i.e., under general comprehensive zoning ordinances, applicable state and case law and state and federal constitutional provisions) of the reasons given for the result of the action taken.
Snyder v. Board of County Comm'rs, 595 So.2d 65, 81 (Fla. 5th DCA 1991) (footnote omitted), quashed, 627 So.2d 469 (Fla. 1993).
Before this Court's opinion in Snyder, appellate courts recognized written findings as the starting point in a circuit *852 court's review. As Judge Zehmer observed:
To meet due process requirements, it is necessary that the agency set out detailed facts found from the evidence so that a court authorized to review the matter on certiorari can first determine whether or not the facts found by the agency constitute lawful grounds for its action and, then, determine whether the evidence supports the finding"Without [detailed findings], the reviewing court would be compelled to grope in the dark and to resort to guess-work as to what facts the Board had found to be true and what facts alleged were not found to be true." Laney v. Holbrook, 150 Fla. 622, 8 So.2d [465,] 468 [ (Fla.1942)]; Hickey v. Wells, 91 So.2d [206,] 210 [(Fla. 1956) ]; Powell v. Board of Public Instruction of Levy County, 229 So.2d [308,] 311-312 [(Fla. 1st DCA 1969) ]. It is not sufficient that the cited findings merely be general conclusions in the language of the statute or ordinance because such conclusions provide no way for the court to know on judicial review whether the conclusions have sufficient foundation in findings of fact. E.g., City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974); McCulley Ford, Inc. v. Calvin, 308 So.2d 189 [(Fla. 1st DCA 1974)]; Lynch-Davidson Motors, Inc. v. Calvin, 308 So.2d 197 (Fla. 1st DCA 1974); Bill Kelley Chevrolet, Inc. v. Calvin, 308 So.2d 199 (Fla. 1st DCA 1974). Furthermore, requiring detailed findings of fact is manifestly helpful in assuring that administrative decisions are not the result of improper considerations.
Irvine v. Duval County Planning Comm'n, 466 So.2d 357, 366 (Fla. 1st DCA 1985) (Zehmer, J., dissenting), quashed, 495 So.2d 167 (Fla.1986) (agreeing with Judge Zehmer's dissenting opinion concerning burden of proof in zoning cases), on remand, 504 So.2d 1265, 1267 (Fla. 1st DCA 1986) (adopting Judge Zehmer's dissenting opinion as the court's opinion and judgment).
Shortly after Snyder, one commentator enunciated the reasons for requiring written findings, including enhanced public understanding of rezoning decisions and effective judicial review:
Strategically, from the perspective of judicial review, local governments will benefit from this practice. It is far more advantageous for the local government to adopt its own written findings of fact, which if supported by substantial competent evidence a court would accept, than to have a court determine whether the local decision is supported by such evidence based on its own independent review of the record.
In any event, requiring written findings of fact serves important public policy objectives that far outweigh any inconvenience to the local government. First, written findings of fact are an integral part of quasi-judicial proceedings, and as the Fifth District observed, are essential to effective strict judicial scrutiny of quasi-judicial decisions. Second, as the Second District observed, written findings of fact will greatly reduce the possibility of arbitrary or politically motivated rezoning decisions, thereby providing greater protection for property rights. Finally, requiring written findings of fact forces close attention to the consistency requirement; if local governments must make written findings of fact to support their consistency determinations, local officials are likely to focus much more closely on the relationship between a proposed rezoning and the goals, objectives and policies of the local comprehensive plan.
*853 Thomas G. Pelham, Quasi-Judicial Rezonings: A Commentary on the Snyder Decision and the Consistency Requirement, 9 J. Land Use & Envtl. L. 243, 287-88 (footnotes omitted).[33]
Hainline and Diebenow more pointedly analyze the effect of our decision to afford quasi-judicial review while not mandating written findings:
In determining that rezonings are quasi-judicial decisions while at the same time eliminating the requirement of written findings in such decisions, Snyder has radically altered appellate review of such decision by circuit courts.
First, in removing findings as the starting point for appellate review, Snyder forces circuit courts to begin with the outcome (denial or approval) of the local zoning board's vote and then review the entire record for any evidence supporting the outcome. By contrast, the review contemplated in Irvine begins with the actual decision, including its reasoning and findings, followed by a review of the record to determine whether the evidence supports the findings.

. . . .
Second, as described above, the absence of written findings or a reliance on written findings necessarily forces circuit courts to "re-weigh" evidence because they are provided no indication of what "weight" a local zoning board assigned to the evidence in the first instance....
Third, the result of circuit court review without findings is that rezoning outcomes are afforded great deference. If the record contains any evidence supporting the outcome, it will most likely be upheld....
Finally, the result of this deferential review is that local zoning boards actually place themselves at a disadvantage if they adopt written findings. If, indeed, a reviewing circuit court must uphold a rezoning decision if there is any competent and substantial evidence in the record which supports the outcome, then why would a local board ever wish to limit the potential grounds for its decision by specifically identifying them? If a board relied on the testimony of a traffic expert in opposition to a rezoning and ignored the testimony of an environmental expert also in opposition, why would it ever limit its potential grounds *854 on review to only the traffic expert? Clearly there is no incentive for local zoning boards to adopt written findings explaining the basis of its decisions.
Hainline & Diebenow, supra, at 54-55 (footnotes omitted).
In this case, the County Commission, which is expected to act in a quasi-judicial capacity, did not reduce to writing its reasons for denying the plat approval, nor did it even provide a verbal explanation (other than isolated comments from the various commissioners). If its reasoning for denial was based on an estoppel theory (having agreed to the increased units per acre, the developer waived right to seek flex), the County Commission should have stated this basis in order to place the developer on notice and to provide the developer with the opportunity to present contradicting evidence.[34]
This requirement is consistent with Snyder. Under Snyder, once the developer demonstrates compliance with the land use plan, the local governmental entity has the burden of establishing why approval should not be granted. The local governmental entity must present evidence in the record from which the circuit court sitting in its appellate capacity can review that evidence. In this case, if there were conditions to be placed on the amendment to the land use plan, then the county had an obligation to reduce those conditions to writing. Here, the county did not sustain its burden and it appears that the Fourth District reached the correct result.
Finally, I also believe we should no longer apply our prior decision in Tamiami Trail Tours v. Railroad Commission, 128 Fla. 25, 174 So. 451 (1937), to zoning decisions because the zoning process is simply not analogous to other administrative proceedings. However, as long as certiorari is the method we have adopted for reviewing zoning decisions, I find no legitimate reason for precluding an appellate court from including directions on remand.
ANSTEAD, J., concurs.
NOTES
[1] Flex units are a discretionary component built into the BCLUP that gives the City the right to shift a certain number of planned dwelling units from one area within the City to another as long as the overall number of units within the City is not increased. For instance, if a developer seeks to build 100 apartments at a density of ten units per acre on a ten acre tract that is slated under the BCLUP for five units per acre, the developer, rather than asking the County to amend the BCLUP, can ask the City for 50 units of flex. If the City grants the request, the project would then comport with the BCLUP and no amendment would be necessary. The City, in turn, would be required to lessen the density in another area of the City by a total of 50 units at a rate of five units per acre. The total number of flex units allowed the City under the BCLUP is finite.
[2] The court ruled as follows: (1) G.B.V. was estopped from raising the claim on certiorari because G.B.V. had obtained transmittal approval and a compromise density of six units per acre from the Commission by promising that G.B.V. would not seek flex units from the City, and then G.B.V. had reneged on that promise and obtained flex units to make up the remaining four units per acre; (2) even if estoppel did not bar the claim, G.B.V. would lose on the merits for two reasons, (a) the Commission's decision was legislative in nature and would be sustained as long as it was "fairly debatable," which it was, and (b) the proposed change was incompatible with surrounding land uses; and finally, (3) no error occurred here but if one did, it did not rise to the level of a departure from the essential requirements of law, which is the standard that must be met before certiorari relief can be granted. In making its ruling, the circuit court relied on the minutes of the December 12 meeting and a transcript of the May 1 meeting.
[3] The district court ruled that the circuit court had departed from the essential requirements of law by deciding an issue (i.e., estoppel) that had not been raised below and by relying on non-record evidence (i.e., the County had submitted to the circuit court the minutes of both the December 12 and May 1 land use meetings, and a transcript of the May 1 meeting). After thus deciding the certiorari issue, the district court went on to address the merits of the underlying plat controversy and determined that the Commission should have approved the plat as proposed. In conclusion, the district court did the following: (1) It granted certiorari; (2) it quashed the order of the circuit court; and (3) it remanded for entry of an order directing the County to approve the plat at ten units per acre.
[4] See generally Park of Commerce Assocs. v. City of Delray Beach, 636 So.2d 12, 15 (Fla. 1994) ("Corn, not Boynton Beach, accurately states the law concerning appellate review of decisions of local governments on building permits, site plans, and other development orders. These local government decisions are quasi-judicial in nature and thus subject to certiorari review by the courts."); see also Board of County Comm'rs v. Snyder, 627 So.2d 469, 474 (Fla.1993) ("Generally speaking, legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy.").
[5] See generally William H. Rogers & Lewis Rhea Baxter, Certiorari in Florida, 4 U. Fla. L.Rev. 477 (1951).
[6] See, e.g., DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla.1957) ("The writ is available to obtain review in such situations when no other method of appeal is available."); see also William A. Haddad, The Common Law Writ of Certiorari in Florida, 29 U. Fla. L.Rev. 207, 214 (1977) ("Certiorari is a catch-all writ in the sense that it may be used to review orders and decisions not otherwise subject or review at that time.").
[7] See, e.g., Combs v. State, 436 So.2d 93, 96 (Fla.1983) ("A district court may refuse to grant a petition for common-law certiorari even though there may have been a departure from the essential requirements of law.").
[8] See generally DeGroot; see also Haddad, supra note 6.
[9] See, e.g., Haines City Community Dev. v. Heggs, 658 So.2d 523, 526 (Fla.1995) ("[C]ertiorari should not be used to grant a second appeal."); id. at 526 n. 4 ("[I]f the role of certiorari was expanded to review the correctness of the circuit court's decision, it would amount to a second appeal. If an appellate court gives what amounts to a second appeal, by means of certiorari, it is not complying with the Constitution, but is taking unto itself the circuit courts' final appellate jurisdiction and depriving litigants of final judgments obtained there."); Combs v. State, 436 So.2d 93, 96 (Fla.1983) ("The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal.").
[10] See William A. Haddad, "Writ of Certiorari in Florida," in The Florida Bar, Florida Appellate Practice, § 18.3 (3d ed.1993); see also Phillip J. Padavano, Florida Appellate Practice, § 9.7 at 160 (2d ed.1997). See generally Allstate v. Boecher, 733 So.2d 993 (Fla.1999) (addressing certiorari review of discovery orders).
[11] See Haddad, supra note 10.
[12] See, e.g., Bd. of County Comm'rs v. Snyder, 627 So.2d 469 (Fla.1993); see also Martin County v. Yusem, 690 So.2d 1288 (Fla.1997); see generally Hirt v. Polk County Bd. of County Comm'rs, 578 So.2d 415 (Fla. 2d DCA 1991).
[13] See cases cited supra note 12.
[14] See Haddad, supra note 6 at 207.
[15] Haines City Community Dev. v. Heggs, 658 So.2d at 530 ("As a case travels up the judicial ladder, review should consistently become narrower, not broader.").
[16] See also Educ. Dev. Center v. City of West Palm Beach, 541 So.2d 106 (Fla.1989) (reaffirming Vaillant). The Court later explained that the two second-tier requirements, i.e., "afforded procedural due process" and "applied the correct law," are simply another way of deciding whether the lower court "departed from the essential requirements of law." Haines City Community Dev., 658 So.2d at 530.
[17] See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla.2000).
[18] See, e.g., Snyder v. Douglas, 647 So.2d 275, 279 (Fla. 2d DCA 1994) ("[O]n certiorari an appellate court can only deny the writ or quash the order under review. It has no authority to take any action resulting in the entry of a judgment or orders on the merits or to direct that any particular judgment or order be entered."); ABG Real Estate Dev. Co. v. St. Johns County, 608 So.2d 59, 64 (Fla. 5th DCA 1992) ("A court's certiorari review power does not extend to directing that any particular action be taken, but is limited to quashing the order reviewed."); Nat'l Adver. Co. v. Broward County, 491 So.2d 1262, 1263 (Fla. 4th DCA 1986) ("A court's certiorari review power does not extend to directing that any particular action be taken, but is limited to denying the writ of certiorari or quashing the order reviewed."); Gulf Oil Realty Co. v. Windhover Ass'n, Inc., 403 So.2d 476, 478 (Fla. 5th DCA 1981) ("[A]fter review by certiorari, and appellate court can only quash the lower court order; it has no authority to direct the lower court to enter contrary orders.").
[19] See, e.g., Florida Power & Light; Educ. Dev. Center; see also Haddad, supra note 6, at 221 ("An examination of common law certiorari cases in recent years reveals a trend toward restricting the scope of review so that the reality of the extent of review on certiorari is to a large degree commensurate with the rhetoric of limited review.").
[20] The circuit court reasoned as follows: (1) At the December 12 transmittal meeting, as a quid pro quo to the Commission for tentatively transmitting the amendment as proposed, G.B.V. promised not to seek flex units from the City; (2) at the May 1 land use meeting, as a quid pro quo to the Commission for considering a compromise density, G.B.V. again indicated that it would stay within the amendment process and would not seek flex; and (3) G.B.V. then obtained flex units from the City to make up the extra four units per acre that the Commission had been unwilling to approve.
[21] See cases cited supra note 4.
[22] The district court stated that the circuit court relied on evidence and decided an issue (i.e., misrepresentation) that had not been presented to the Commission. This statement was incorrect. First, the records of the earlier Commission meetings were available to the Commission at all times-they were the Commission's own records. Second, the misrepresentation issue had been raised and discussed before the Commission. (When G.B.V. presented its application at the November 12 meeting, the commissioners asked G.B.V.'s counsel if he had promised earlier not to use flex and counsel replied that he had done so but only if the Commission approved a density of ten units per acre. The commissioners questioned the accuracy of this response but ultimately moved on to discuss other matters.) The district court thus reached the right result albeit for the wrong reason. Cf. Combs v. State, 436 So.2d 93, 96 (Fla.1983) ("Since the trial court reached the right result, albeit for the wrong reasons, the affirmance [was proper].").
[23] See discussion and cases cited supra note 16.
[24] The district court in the present case, as in Florida Power & Light Co. v. City of Dania, 761 So.2d 1089 (Fla.2000), may have felt obligated to address the merits of the plat application because the circuit court below consisted of a single judge who had made factual findings on first-tier certiorari review. Both the present case and Florida Power & Light arose in the Seventeenth Judicial Circuit where local court rules permit a single judge to sit as the circuit court when conducting first-tier certiorari review. In contrast, local court rules in other judicial circuits call for the circuit court to sit in multi-judge panels in such cases. We have referred this matter to the Rules of Judicial Administration Committee of The Florida Bar for study. See id. at 1094.
[25] The fact that the County staff recommended approval of the plat is not dispositive. On first-tier certiorari review, the circuit court's task is to review the record for evidence that supports the agency's decision, not that rebuts it-for the court cannot reweigh the evidence. See, e.g., Haines City Community Dev., 658 So.2d at 530; Educ. Dev. Center, 541 So.2d at 108. Thus, the staff recommendation is outside the scope of the inquiry at this point.
[26] See, e.g., T.R. Hainline, Jr. & Steven Diebenow, Snyder House Rules? The New Deference in the Review of Quasi Judicial Decisions, Fla. B.J., Nov. 2000, at 53.
[27] Had G.V.B. challenged the adoption of the land use amendment calling for a maximum six-unit density on the thirty acre parcel, the dictates of this Court's opinion in Yusem would have applied.
[28] One hundred twenty units corresponds to the four units per acre differential between G.B.V.'s request of ten units and the County Commission authorization of six units multiplied by thirty acres.
[29] In a memo contained in the record dated September 27, 1996, from Susan M. Tramer, Broward County Planning Council Administrator, to Elliot Auerhahn, Broward County Department of Strategic Planning and Growth Management Director, Tramer indicates that G.B.V.'s submitted perimeter plat was in compliance with the permitted uses and densities of the land use plan.
[30] The circuit court noted that "an attack on a legislative action is not properly raised in a [certiorari] review proceeding, but should be made in an action for declaratory and injunctive relief." G.B.V. Int'l, Ltd. v. County of Broward, No. 96-17083 CACE(21), at 6 n. 3 (Fla. 17th Cir. Ct., order dated July 1, 1997). The circuit court's statement was correct. See Yusem, 690 So.2d at 1295 (challenges to legislative activities must be commenced as original actions and not by certiorari petitions). However, as this platting hearing was quasi-judicial and not legislative, the challenge to the County Commission's action was properly brought as a petition for certiorari. See Board of County Comm'rs v. Snyder, 627 So.2d 469, 474-75 (Fla.1993) (quasi-judicial land use proceeding properly reviewable by petition for certiorari). Thus, the circuit court's finding that the proceeding was legislative, not quasi-judicial, was error.
[31] The majority refers the following question: "Whether the Court should implement a rule requiring written final decisions with detailed findings of fact in local land use actions that are subject to review in the courts." However, I would narrow the scope of the question and request study of whether a written statement should be required when local governments make zoning decisions and, if written statements are not made in all such zonings, what zoning issues or hearings, if any, should require written findings.
[32] This fact also is support for the need for a three-judge panel when a circuit court sits in its appellate capacity in review of a zoning decision. See Florida Power & Light v. City of Dania, 761 So.2d 1089, 1094 n. 10 (Fla.2000) (citing Martin County v. City of Stuart, 736 So.2d 1264 (Fla. 4th DCA 1999) (utilizing a three-judge panel); Dusseau v. Metropolitan Dade County, 26 Fla. L. Weekly S329, ___ So.2d ___, 2001 WL 521311 (Fla. May 17, 2001) (utilizing a three-judge panel); State v. Shaw, 643 So.2d 1163 n. 1 (Fla. 4th DCA 1994) (utilizing a four-judge panel); Walberg v. Metropolitan Dade County, No. 97-006AP (Fla. 11th Cir.Ct.App.Div. Mar. 4, 1999) (utilizing a three-judge panel)).
[33] Pelham also claims that our decision in Snyder not to require findings of fact actually serves to disguise arbitrary actions by local government.

[B]y relieving local governments of this fact finding responsibility, the Florida Supreme Court missed an opportunity to emphasize the importance of complying with the consistency requirement, made it much easier for local officials to disguise arbitrary decisions, and made more difficult effective judicial review of local rezoning decisions.
Id. at 288. On the other hand, another commentator asserts an opposite effect-that our decisions will undermine the purpose of the Growth Management Act:
Without the deference afforded to legislative actions, the circuit courts are unlikely to find that the government's decision was supported by substantial, competent evidence, and therefore is not arbitrary, discriminatory or unreasonable.
Whether there was substantial, competent evidence to support the government's decision will be decided on a case-by-case basis by the circuit courts, and a circuit court's decision on this point is not subject to review on appeal. Therefore, the combined effect of the Snyder, Parker, and Puma rulings is to undermine the Growth Management Act by stripping local government of most of its legislative land use decision making power and placing that power directly in the hands of the circuit courts.
Mary Dawson, The Best Laid Plans: The Rise and Fall of Growth Management in Florida, 11 J. Land Use & Envtl. L. 325, 350 (1996) (footnotes omitted).
[34] It also is important for the local governmental entity to make clear when it claims to be sitting in its quasi-judicial capacity. The determination as to the nature of the proceeding affects the litigant's rights (e.g., due process implicated in quasi-judicial proceeding), the role of the county attorney, the type of appellate proceeding, and the extent of the review process. Further, if a claim is made before the circuit court that the proceeding is legislative, the circuit court should make a preliminary determination as to the nature of the proceedings before reviewing the claim on the merits. This is important both in defining the scope of review and to the ability of the party to present evidence de novo before the circuit court.