916 So.2d 850 (2005)
VERIZON WIRELESS PERSONAL COMMUNICATIONS, L.P., Petitioner,
v.
The SANCTUARY AT WULFERT POINT COMMUNITY ASSOCIATION, INC., a Florida corporation, Respondent.
No. 2D04-2654.
District Court of Appeal of Florida, Second District.
August 31, 2005.
Rehearing Denied October 12, 2005.
*852 Steven L. Brannock, Gerald L. Knight, and David C. Borucke of Holland & Knight LLP, Tampa, for Petitioner.
Michael R. Whitt and Sanjay Kurian of Becker & Poliakoff, P.A., Fort Myers, for Respondent.
NORTHCUTT, Judge.
This case involves a dispute over the proposed placement of a telecommunications tower in the City of Sanibel. Verizon Wireless Personal Communications, L.P., gained permission from the Sanibel City Council to install the tower on city-owned property where the City maintains the Wulfert Road wastewater treatment plant. A neighboring homeowners' association, The Sanctuary at Wulfert Point Community Association, Inc., opposes the plan. The Association filed a certiorari petition in circuit court and obtained an order quashing the City's approval of Verizon's application. In turn, Verizon has petitioned us to issue a writ of certiorari quashing the circuit court's order. We grant the petition.
The Association objects to the proposed location for Verizon's tower based on a 1990 amended settlement agreement between the City and the Wulfert Point developers and on a planned unit development (PUD) ordinance enacted as part of that settlement. Some history of the settlement agreement and subsequent ordinances adopted by the City is necessary to our discussion.
In 1982, the City entered into a settlement stipulation and mutual release with the Wulfert Point developers to resolve litigation over the development of the Wulfert Point property. The settlement made specific provision for the manner in which the property was to be developed and the uses that would be permitted or required in the development. Eight years later, the parties to that agreement entered into an amended settlement stipulation and mutual release. As part of the amended settlement, the developers were required *853 to design, build, and convey to the City a wastewater treatment plant on 6.1 acres of land. The plat of the development noted the location of the wastewater treatment plant on Tract A and stated that "TRACT `A' IS HEREBY DEDICATED TO THE CITY OF SANIBEL, A FLORIDA MUNICIPAL CORPORATION, SUBJECT TO THE PUBLIC ROADWAY, UTILITY, AND BICYCLE PATH EASEMENT AS SHOWN HEREON." In due course, the Wulfert Road wastewater treatment plant was built and the land was conveyed to the City by warranty deed.[1]
The amended settlement also recited the City's contemporaneous enactment of a PUD ordinance, which stated that it was designed to implement the terms of the amended settlement stipulation and mutual release and to otherwise establish standards for the development of the Wulfert Point property. City of Sanibel, FL, Code § 126-1446. The amended settlement stated that the PUD ordinance, "along with other provisions of the Land Development Code, provides for development regulations and standards" for the Wulfert Point property. The parties expressly agreed that the language of the PUD ordinance was satisfactory. Still, the amended settlement acknowledged that "the City Council cannot by law bargain away its power to amend an ordinance." It further provided:
The parties do acknowledge and agree, however, that during the term of the Court's continuing jurisdiction the request by Plaintiffs to make substantial amendments to the plan for development which the City by final action disapproves or the City's final action in making substantial amendments to the Planned Unit Development ordinance to which the Plaintiffs object, shall be grounds for seeking resolution by the Court under this Settlement Agreement. Except as provided hereinabove, nothing in this Agreement shall be construed to affect or limit the right of the parties to amend or seek amendment to the Comprehensive Land Use Plan, the Land Development Code, or other regulations.
The PUD ordinance stated that all provisions contained elsewhere in the City's land development code were to govern the development of the property, except as otherwise specifically provided in the PUD ordinance. Sanibel Code § 126-1448. It appears that the property has been developed as contemplated by the amended settlement. It further appears that the City has amended the PUD ordinance several times in the years since its passage, without any further amendment to the settlement agreement.
In 1999, the City enacted a telecommunications ordinance after approximately two years of deliberation and debate. Sanibel Code ch. 126, art. XVII. One announced purpose of the 1999 ordinance was to minimize the visual impact of telecommunications devices. Sanibel Code § 126-1512(c)(3). To that end, the City encouraged the placement of towers in several specified "telecommunications tolerant areas," which the City Council chose because they were buffered somewhat by vegetation or distance from residential areas. Sanibel Code § 126-1536(a). One location designated as a telecommunications tolerant area was the Wulfert Road wastewater treatment plant site. Sanibel Code § 126-1536(c).
The ordinance further provided that

*854 [t]he addition of one or more telecommunications facilities or devices, as a principal use, on a lot or parcel already developed with a principal use shall not be considered a violation of any provision of this land development code which limits development of a lot or parcel to a single principal use.
Sanibel Code § 126-1590(h). Moreover, the ordinance stated that "[i]n the event of any conflict with other regulations contained in this land development code, the provisions of this article shall supersede, with respect to the regulation of telecommunications devices." Sanibel Code § 126-1513(b)(3).
In 2001, Verizon applied for a permit to construct a tower at the Wulfert Road location, a previously designated telecommunications tolerant area. Pursuant to section 126-1560(d) of the telecommunications article, the City processed Verizon's application under a general provision of the land development code that exempts the City from the code's specific requirements. Sanibel Code § 78-7.
The City conducted several quasi-judicial hearings on Verizon's application. During these hearings, the Association objected to the proposed location of the telecommunications tower as violative of the PUD ordinance and the amended settlement agreement. Despite these objections, the City Council approved Verizon's application by passing Resolution 02-83. The Association then challenged the City's resolution by certiorari in the circuit court.
A circuit court certiorari proceeding to review local government action is governed by a three-part standard of review under which the court must determine: (1) whether procedural due process was accorded; (2) whether the essential requirements of law were observed; and (3) whether the administrative findings and judgment were supported by competent, substantial evidence. Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995) (citing City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982)). In this case, the Association argued only that the City failed to observe the essential requirements of the law; it made no argument regarding due process or sufficiency of the evidence.
The circuit court found that the Association had standing.[2] It granted certiorari relief, quashing the City's resolution based on its conclusion that the approval of Verizon's application violated the PUD ordinance and breached the amended settlement agreement. The court also ruled that use of this property for a telecommunications tower was contrary to the plat's designation of the parcel as a wastewater treatment plant. Finally, the court held that the City was equitably estopped from approving Verizon's application.
In our "second-tier" certiorari review of the circuit court's decision, our inquiry is limited to whether the circuit court afforded procedural due process and whether it applied the correct law, the latter being "synonymous with `observing the essential requirements of law.'" Haines City Cmty. Dev., 658 So.2d at 530. Verizon has made no challenge to the due process afforded below.
We conclude that the circuit court applied the incorrect law when it decided the controversy based on the amended settlement agreement and the PUD ordinance. Rather, the propriety of the City's action was governed by the telecommunications *855 ordinance, and the City Council was correct to apply it. Indeed, the Council was legally obliged to do so even if it had preferred to abide by contrary provisions in the amended settlement agreement and PUD ordinance.
The reason is that, although the City Council's action on the Verizon application fell into the category commonly referred to as "quasi-judicial," this term does not imply that the Council possesses judicial power. Instead, it is simply a characterization of the action itselfone that imposes certain obligations on the City Council and that allows judicial review by way of certiorari proceedings in circuit court. See Broward County v. G.B.V. Int'l, Ltd., 787 So.2d 838, 843 (Fla. 2001) ("As a rule, only quasi-judicial actions are reviewable via certiorari."). Lacking judicial power, the City Council was not empowered to rule on the validity of an ordinance; specifically, it lacked the power to invalidate the telecommunications ordinance and thereby disregard it. "[Q]uasi-judicial boards do not have the power to ignore, invalidate or declare unenforceable the legislated criteria they utilize in making their quasi-judicial determinations." Miami-Dade County v. Omnipoint Holdings, Inc., 863 So.2d 375, 377 (Fla. 3d DCA 2003).
To be sure, a city council may enact ordinances, amend them, and repeal them. But such legislative functions were outside the scope of the City Council's quasi-judicial consideration of Verizon's application. "Generally speaking, legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy." G.B.V. Int'l, 787 So.2d at 842 n. 4 (quoting Bd. of County Comm'rs v. Snyder, 627 So.2d 469, 474 (Fla.1993)). The purpose of the certiorari proceeding below was to review the City Council's application of the telecommunications ordinance to Verizon's request. As such, the circuit court was not reviewing the Council's previous decision to enact that ordinance. See G.B.V. Int'l, 787 So.2d at 848 (Wells, C.J., concurring) (explaining circuit court's error in treating county commission's action as legislative when it was quasi-judicial).
In sum, when considering Verizon's application, the City Council properly applied the telecommunications ordinance, which expressly superseded any contrary provisions in the land development codeincluding those contained in the PUD ordinance. It follows that the circuit court applied the incorrect law when, in reliance on the PUD ordinance and the amended settlement agreement, it declared that the City Council's decision departed from the essential requirements of law.
The same analysis applies to the Association's argument that use of this property for a telecommunications tower was contrary to the plat's designation of the parcel as a wastewater treatment plant. The decision to allow telecommunications towers on this property was made upon the enactment of the telecommunications ordinance in 1999. And, as previously noted, under that ordinance the placement of a telecommunications tower, as a principal use, on a parcel that had been developed with another principal use would not violate the land development code, even insofar as the code limited the principal uses permitted on the parcel. Sanibel Code § 126-1590(h).
To the extent that the circuit court rested its conclusion on a finding that the plat's dedication of the property for a wastewater treatment plant constituted a restrictive covenant, we conclude that the circuit court failed to apply the correct law. Generally, a dedication of land to public use transfers only an easement, and the owner retains legal title to the land. City of Coral Gables v. Old Cutler Bay *856 Homeowners Corp., 529 So.2d 1188 (Fla. 3d DCA 1988). In this case, however, the City acquired the property itself.
[O]nce land has been acquired in fee simple for public use, either by the exercise of the power of eminent domain or by purchase or donation, the former property owner retains no interest in the land. The public use may thereafter be abandoned or the land may be devoted to a different use without any impairment of the title acquired, absent fraud or bad faith at the time of the conveyance.
Mainer v. Canal Auth., 467 So.2d 989, 992 (Fla.1985). No one has accused the City of fraud or bad faith at the time of the conveyance.
Finally, we conclude that the circuit court's application of equitable estoppel was a departure from the essential requirements of the law. Equitable estoppel may apply to a local government's exercise of zoning power "when a property owner (1) relying in good faith (2)[u]pon some act or omission of the government (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired." Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 572-73 (Fla. 2d DCA 1975).
The City Council implicitly rejected the Association's estoppel claim by approving Verizon's application. In its final hearing, the Council questioned the Association's standing to raise this issue and remarked upon the inequity of the Association's silence in the two-and-a-half years since the passage of the telecommunications ordinance.[3] In the certiorari proceeding below, the circuit court should have reviewed the City Council's record to determine whether there was competent, substantial evidence to support the City's decision. Instead, the court improperly reweighed the evidence and the equities. See Sarasota County v. Kemper, 746 So.2d 539 (Fla. 2d DCA 1999) (holding that circuit court departed from essential requirements of law by applying wrong standard of review and reweighing evidence on issue of equitable estoppel).
Accordingly, we grant the petition for certiorari and quash the circuit court's order.
Petition granted; order quashed.
CASANUEVA and KELLY, JJ., Concur.
NOTES
[1] Although our record does not contain a copy of the deed, no one has disputed its existence or the fact that the deed contained no restrictions on the use of the property and no reversionary clauses.
[2] Verizon challenges the circuit court's finding on standing as incorrect and as a factual determination outside the scope of certiorari review. We do not find it necessary to reach the merits of this issue.
[3] From comments made in the City Council's hearings on Verizon's application, it appears that during the City's consideration of the telecommunications ordinance a Wulfert Point developer wrote a letter to the City Council objecting to the inclusion of the Wulfert Road wastewater treatment plant as a telecommunications tolerant area and claiming that the designation would violate the amended settlement agreement. Other than that letter, however, it appears that no action was taken by the developers, by the neighboring residents, or by the Association to challenge either the validity of the telecommunications ordinance or the designation of the Wulfert Road property as a telecommunications tolerant area.