MAKAR, J.,
concurring in part, dissenting in part.
At issue is a discovery order requiring that Camilla B. Zarzaur disclose “all her records regarding treatment, diagnosis, care and medications from all her psychologists, psychiatrists, counselors, and medical doctors who have treated her for any mental health issues or prescribed pain medication or any mental health medications to her in the last seven (7) years.” The order arises in this dissolution/time-sharing dispute due to the need to determine whether Ms. Zarzaur has the ability to resume greater visitation with her daughter or return to the custodial arrangement in place before court orders were entered curtailing her contact with her daughter based on judicial findings that she posed the potential for harm to herself and others arising from substance abuse and mental health issues. Ms. Zarz-aur asks that we grant her petition and quash the trial court’s order, which should be done in only one limited respect. Broward County v. G.B.V. Intern., Ltd., 787 So.2d 838, 844 (Fla. 2001) (On certiorari review, our role is “to halt the miscarriage of justice, nothing more,” leaving the parties to proceed thereafter as if “the order reviewed not been entered.”) (citation omitted).
The trial court’s order extends to seven years of records, but Mr. Zarzaur initially requested only three years and later made the duration unlimited. No basis in the record exists for a durational limit of seven years (which appears to coincide with the child’s age) or beyond, though an adequate basis exists for the three-year period initially sought, during which much occurred relative to the Ms. Zarzaur’s fitness. For this reason, the order should be quashed to the extent that it requires disclosure of records that existed more than three years before the date of the order (excepting out those provided to the independent psychologist), leaving open whether a greater duration is justifiable upon an adequate showing of need.
But that is the extent to which relief is justified because the record establishes that Ms. Zarzaur’s self-destructive behavior has placed her mental health and sub *1122 stance abuse at issue in determining what degree of parental responsibility she is capable of achieving, thereby implicitly waiving her statutory privilege in the documents requested. O’Neill v. O’Neill, 823 So.2d 837, 841 (Fla. 5th DCA 2002) (statements and behavior of parent can collectively “constitute a calamitous event and support an implicit waiver of the statutory privilege”); see also Critchlow v. Critchlow, 347 So.2d 453, 455 (Fla. 3d DCA 1977) (holding waiver of patient-psychiatrist privilege where former wife was voluntarily committed for mental health treatment and mental health was vital to a proper determination of custody); see generally Bruce G. Borkosky & Mark S. Thomas, Florida’s Psychotherapist-Patient Privilege in Family Court, Fla. B.J., May 2013, at 35, 36 (providing examples of waiver of privilege where spouse was “too emotionally distraught to enter into a settlement agreement,” where “information sought relates directly to the well-being of the child or to the parent’s ability to adequately care for the child, and the child may be in danger,” or where a “calamitous event has occurred, such as an attempted suicide”).
The record reflects a prolonged series of troubling events such as a suicide threat, prescription drug abuse, full-time illegal marijuana use, endangering her child due to reckless and dangerous acts such as nodding off while driving on a bridge, neglecting her child’s needs at school and allowing truancy, having a live-in boyfriend in violation of the parenting plan, alleging incapacity from use of Lunesta® in entering the settlement agreement, and so on. Her friends, the nanny, a boarder, and others unvaryingly testified that these types of major problems exist, which supported judicial intervention to protect her children and a waiver of her privilege in the requested mental health and medication records. That the Marchman Act proceeding, standing alone, didn’t result in confirmed substance abuse doesn’t negate the substantial evidence establishing mental health or substance abuse problems.
And Ms. Zarzaur’s behavior is not just affecting her child with Mr. Zarzaur. In a parallel proceeding, before another circuit judge, the same story is playing out as to her older child from a previous marriage, who lives with her; the two proceedings are mirror images of one another. Based on Ms. Zarzaur’s serious problems, the trial judge in that case has taken much the same steps as in this case to shield Ms. Zarzaur’s children from her. The sad reality is that the oldest child appears to be the “adult in the room,” raising the mom and sheltering her from a further downward spiral. The trial judge in this case was very aware of the evidence and rulings in the parallel case, and was and continues to be in a superior position to determine the extent to which Ms. Zarz-aur’s ongoing behavior justifies release and review of records related to her mental health and substance abuse (subject to the protective order that was entered). On the current record, it is plain that the discovery sought is germane and potentially critical in determining the' extent to which Ms. Zarzaur can undertake a greater role in her children’s upbringing.
The trial court held an evidentiary hearing but didn’t make an explicit finding that the series of disquieting events individually or collectively crossed the threshold and became “calamitous,” thereby supporting a broad waiver and scope of discovery. In this regard, Ms. Zarzaur makes the point that appellate review is made difficult without explicit factual findings that a calamity exists, which is true. Perhaps judicial hesitancy exists to conclude that a “calamitous event” has occurred due to its stigma on the parent; but, the counterpoint is that the situation in this case is little different from that in O’Neill, which involved substance abuse, ideations of sui *1123 cide, mental health problems, and related factors that compromised the children’s safety and well-being and impliedly waived the parent’s privilege in the records sought. 823 So.2d at 839-41. In that case, the Fifth District concluded that the wife’s “statements, when joined with appropriate supporting behavior, as here, constitutes a calamitous event and support an implicit waiver of the statutory privilege. A trial court is not required to wait until a calamitous event becomes a tragedy.” Id. (Emphasis added). As in this case, “there was additional testimony demonstrating that [the parent] was unable to function as a properly nurturing parent” and that “she had driven a motor vehicle when she was apparently intoxicated with one of her children as a passenger.” Id. at 841. Though not identical, the two situations are nearly bookends, justifying the discovery order below.
Present fitness to parent is a function of the totality of all relevant information, including records of mental health and substance abuse from the recent past, provided a showing is made as to how they contribute to understanding present fitness. The Second District highlighted this point in Schouw v. Schouw, 593 So.2d 1200, 1201 (Fla. 2d DCA 1992), saying that “[w]hat is relevant to the trial court’s determination regarding child custody is the parties’ present ability and condition,” but saying in the next sentence that “[tjhere was no showing by the wife that the husband’s prior psychological records would contribute to such a determination.” Id. In sharp contrast to Schouw, the three-year window of records and the testimonial evidence here show an interwoven pattern of distressing conduct that contributes to the determination of the “present ability and condition” to parent. The trial court is required to weigh all relevant evidence in making this judgment, discounting what doesn’t contribute to an accurate prognostication of current fitness; but it is not required to wear judicial blinders.